Dorance D. and Helen A. BOLTON, Petitioners-Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

No. 82–7013.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1982.

Decided Dec. 2, 1982.

Charles S. Wulke, South Pasadena, Cal., for petitioners-appellees.

Robert Pomerance, Washington, D.C., for respondent-appellant.

Before SNEED and ALARCON, Circuit Judges, and COPPLE,* District Judge.

COPPLE, District Judge:

This appeal from the United States Tax Court presents a question involving the in-terpretation of statutes governing deductibility of expenses incurred in the rental of a vacation home. Dorance and Helen Bolton (taxpayers) owned a vacation home in Palm Springs, California. In 1976, taxpayers rented the unit for 91 days, used it personally for 30 days, and left it unoccupied for 244 days. During that year, taxpayers made interest payments totalling $2,854 and paid property taxes of $621. In addition, taxpayers incurred $2,693 in maintenance expenses (excluding taxes and interest). Taxpayers received $2,700 gross rents from the unit in 1976.

I.R.C. § 280A, enacted in 1976, limits a taxpayer's business deductions for expenses incurred with respect to a dwelling unit if that unit was used as a personal residence during the tax year.[1] If § 280A applies, as it does in this case, a general rule is invoked that no business deductions are allowable with respect to the unit.[2] The statute, however, provides several exceptions. Section 280A(b) provides that non-business expenditures otherwise deductible (i.e. taxes, interest, and casualty losses) are not barred by the statute.[3] Further, § 280A(c)(3) allows

---

* Honorable William P. Copple, United States District Judge for the District of Arizona, sitting by designation.

1. IRC § 280A applies with respect to deductions taken for rental home expenses if the taxpayer's personal use of the property exceeds the greater of 14 days or 10% of the number of days the unit is rented.

   This section was enacted as a response to congressional concern that rental of property used personally by the taxpayer as a residence afforded unwarranted opportunities to obtain deductions for expenses of a personal nature. With respect to vacation homes, the legislative history behind the statute expresses the view that rental activities were often undertaken merely to defray the cost of maintaining a vacation home for the taxpayer's personal use, rather than for the purpose of turning a profit. Although IRC § 183 could generally have been expected to apply to such rentals of vacation homes as activities not engaged in for profit, thereby limiting deductions with respect to maintenance of a vacation home to the amount of gross income received from its rental, Congress was concerned that § 183 and the related regulations did not provide sufficiently specific rules as to the degree of personal use of a vacation home which would result in its rental being classified as an activity not engaged in for profit. Section 280A was thus intended to provide "definitive rules ... to specify the extent to which personal use [of a vacation home] would result in the disallowance of certain deductions in excess of gross income" from the property. H.R.Rep. No. 94–658, 94th Cong., 2d Sess. at 162–66; Sen.Rep. No. 94–938, 94th Cong., 2d Sess. at 150–55, *both reprinted* in U.S.Code Cong. & Ad.News at 289, 3056–60, 3582–87 (1976).

2. Section 280A(a) provides as follows:

   (a) *General Rule.*—Except as otherwise provided in this section in the case of a taxpayer who is an individual or an electing small business corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.

3. Section 280A(b) provides as follows:

   (b) *Exception for Interest, Taxes, Casualty Losses, Etc.*—Subsection (a) shall not apply

a deduction for "any item attributable to rental of the unit" (i.e. maintenance expenses).[4] But this latter exception to the general rule is limited. In computing deductible maintenance expenses, the taxpayer must first comply with § 280A(e) and § 280A(c)(5), respectively.

Section 280A(e) requires that a preliminary computation be undertaken to determine the unit's maintenance expenses which are attributable to rental and thus can be deducted.[5] The statute provides that the following ratio be used in making this calculation:

Number of days the unit is actually rented

Total number of days during the year the unit is used.

The figure obtained through use of this ratio is then multiplied against the total maintenance expenses of the unit to arrive at a tentative deduction figure. This formula, as applied to the above facts, generates the following calculation:

The figure $2,020, then, is the tentative amount of maintenance expenses deductible as attributable to rental.[6]

Having arrived at a tentative maintenance deduction figure, there remains § 280A(c)(5) to be complied with.[7] This section provides first that deductions allowed for expenses attributed to rental of the unit (i.e. deductions of any kind—maintenance, taxes, interest) cannot exceed an amount equal to the amount of gross rental income received from the property for that year ($2,700 on the instant facts). Second, this section requires that deductions allowable whether or not the unit was used as a rental (i.e. interest and taxes in this case) be allocated between rental and non-rental use. The amount of otherwise deductible interest and taxes allocated to rental use of the property is then to be counted toward the gross rentals maximum deduction ceiling ($2,700). The statute, however, provides no formula for allocating such "al-

$$\frac{91\ (\#\ \text{days rented})}{121\ (\#\ \text{days used})} = 75\% \times \$2,693\ (\text{total maintenance expenses}) = \$2,020,$$

to any deduction allowable to the taxpayer without regard to its connection with his trade or business (or with his income-producing activity).

4. Section 280A(c)(3) provides as follows:
   (3) *Rental use.*—Subsection (a) shall not apply to any item which is attributable to the rental of the dwelling unit or portion thereof (determined after the application of subsection (e)).

5. Section 280A(e) provides as follows:
   (e) *Expenses Attributable to Rental.*—
   (1) *In general.*—In any case where a taxpayer who is an individual or an electing small business corporation uses a dwelling unit for personal purposes on any day during the taxable year (whether or not he is treated under this section as using such unit as a residence), the amount deductible under this chapter with respect to expenses attributable to the rental of the unit (or portion thereof) for the taxable year shall not exceed an amount which bears the same relationship to such expenses as the number of days during each year that the unit (or portion thereof) is rented at a fair rental bears to the total number of days during such year that the unit (or portion thereof) is used.

   (2) *Exception for deductions otherwise allowable.*—This subsection shall not apply with respect to deductions which would be allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was rented.

6. Throughout their presentations the parties have used rounded percentage figures as well as the nearest dollar figures in applying such percentages in their calculations. This opinion follows the same practice.

7. Section 280A(c)(5) provides as follows:
   (5) ... *Limitation on deductions.*—In the case of a use described in paragraph (1), (2), or (4) and in the case of a use described in paragraph (3) where the dwelling unit is used by the taxpayer during the taxable year as a residence, the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of—
   (A) the gross income derived from such use for the taxable year, over
   (B) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used.

ways deductible" expenses (taxes and interest) between rental and non-rental use of the unit.

The primary issue in this case concerns the method by which this latter allocation is to be achieved. Taxpayers contend, and the tax court agreed, that the allocation be based on a ratio of number days rented/number days in a year. The percentage figure derived from this ratio would be the percentage of taxes and interest paid which is allocable to rental use of the unit, and in turn applied toward the gross rentals deduction limit. The Commissioner, on the other hand, takes the position that interest and taxes should be allocated to rental use by using the same fraction as that used for maintenance expenses under § 280A(e). The ratio to use under this method would accordingly be number days rented/number days the property was *actually* used. The percentage derived from this ratio would be the percent of taxes and interest which, in the Commissioner's view, would be applied toward the rental use deduction limit.[8]

The United States Tax Court, in *Bolton v. Commissioner,* 77 T.C. 104 (1981), held that the deduction for interest and real estate taxes attributable to the rental unit is to be computed as per the taxpayer's method, i.e. the ratio to use for the § 280A allocation for taxes and interest is number days unit rented/number days in a year. One basis for the tax court's decision was the premise that interest and property taxes, unlike maintenance-type expenses, are expenses that continue on a daily basis throughout the year. The tax court recognized that a computation based on the period the unit was *actually* used (121 days in this case) is useful in determining the amount of otherwise nondeductible maintenance expenses, ordinarily associated with actual use of the property, which are to be attributed to rental use. Interest and property taxes, however, accrue ratably over the entire year. The tax court accordingly found that the annual nature of tax and interest expenses as well as the legislative intent shown both by the legislative history and the language of § 280A supported the taxpayer's interpretation rather than that of the Commissioner. Despite the tax court's decision, the Commissioner's position in this matter is currently the subject of a Proposed Treasury Regulation, § 1.280A–3(d).[9]

8. To clarify and illustrate the impact of the competing positions in this appeal, the following calculations based on the facts in this case are presented:

Taxpayer's Position:

| | | |
|---|---|---|
| Gross rental income | | $2,700 |
| Total interest and property taxes | $3,475 | |
| Allocation fraction $^{91}/_{365}$ = 25% | | $ 868 |
| (attributable to rental use) | | |
| Rental income in excess of interest and property taxes | | $1,832 |
| Total maintenance expenses | $2,693 | |
| Allocation fraction $^{91}/_{121}$ = 75% | | |
| Maximum allowable deduction for maintenance | | $2,020 |

Given the above, the taxpayer may deduct $1,832 of the $2,020 in potentially deductible maintenance expenses as derived from § 280A(e)(1).

Commissioner's Position:

| | | |
|---|---|---|
| Gross rental income | | $2,700 |
| Total interest and property taxes | $3,475 | |
| Allocation fraction $^{91}/_{121}$ = 75% | | $2,606 |
| (attributable to rental use) | | |
| Rental income in excess of interest and property taxes | | $ 94 |
| Total maintenance expenses | $2,693 | |

| | | |
|---|---|---|
| Allocation fraction $^{91}/_{121}$ = 75% | | |
| Maximum allowable deduction for maintenance | | $2,020 |

Given the above, the taxpayer may deduct $94 of the $2,020 in potentially deductible maintenance expenses as derived from § 280A(e)(1).

The Commissioner's position, by allocating a greater proportion of otherwise deductible interest and taxes to rental of the unit, leaves less room under the gross rentals ceiling for deduction of maintenance expenses of the rental. By contrast, taxpayer's position allows a greater percentage of the § 280A(e) maintenance expenses to be deducted. Since interest and taxes paid on the property are deductible whether or not connected to business use of the property, it is to the taxpayer's advantage to have as small a percentage as possible of taxes and interest allocated to rental use and applied toward the gross rentals deduction limit for the unit.

9. Proposed Treasury Regulation § 1.280A–3, 45 Fed.Reg. 52405 (Aug. 7, 1980) provides in part as follows:

(d) *Limitation on deductions if taxpayer has used dwelling unit as a residence*—(1) *In*

This Court is essentially faced with deciding whether to give deference to the Commissioner's interpretation of the statutes in question or to affirm the tax court in finding the Commissioner's position unreasonable. The United States Supreme Court has recently set forth the approach to follow in such a situation. In *United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 102 S.Ct. 821, 70 L.Ed.2d 792 (1982), the Court stated with regard to Treasury Regulations that:

> Deference is ordinarily owing to the agency construction if we can conclude that the regulation "implements the congressional mandate in some reasonable manner." But this general principle of deference, while fundamental, only sets "the framework for judicial analysis; it does not displace it."

> *general.* The deductions allowable under chapter 1 of the Code for a taxable year with respect to the rental use of a dwelling unit which the taxpayer is treated as having used as a residence during such year shall not exceed the gross rental income from the unit for such year. See section 280A(d)(3) and § 1.280A–1(e)(2) for special rules affecting the determination whether the taxpayer has used a unit as a residence if any day during the taxable year is part of a "qualified rental period."

> (2) *Gross rental income.* For purposes of section 280A and this section gross rental income from a unit equals the gross receipts from rental of the unit reduced by expenditures to obtain tenants for the unit, such as realtors' fees and advertising expense. The gross rental income from a unit for a taxable year includes rental income for periods during which the unit is rented at less than a fair rental as well as rental income for periods during which the unit is rented at fair rental.
> (3) *Order of deductions.* Deductions with respect to the rental use of a dwelling unit are allowable in the following order and only to the following extent:
> (i) The allocable portions of amounts otherwise allowable as deductions for the taxable year under chapter 1 of the Code with respect to the dwelling unit without regard to the rental use of the unit, e.g., mortgage interest and real estate taxes, are deductible as rental expenses to the extent of the gross rental income from the unit.
> (ii) The allocable portions of amounts otherwise allowable as deductions for the tax-

The framework for analysis is refined by consideration of the source of authority to promulgate the regulation at issue. The Commissioner has promulgated Treas.Reg. 1.1563–1(a)(3) interpreting this statute only under his general authority to "prescribe all needful rules and regulations." 26 U.S.C. § 7805(a). Accordingly, "we owe the interpretation less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision ...." *United States v. Vogel Fertilizer Co., supra,* at 455 U.S. at 24, 102 S.Ct. at 827 (citations omitted).

The approach taken by the *Vogel* Court is applicable to the situation faced by this Court even as to the source of the Commissioner's power to propose the regulation involved in this case.[10] This Court must

> able year under chapter 1 of the Code by reason of the rental use of the dwelling unit (other than those which would result in an adjustment to the basis of property) are allowable to the extent the gross rental income exceeds the deductions allowed or allowable under subdivision (i) of this subparagraph.
> (iii) The allocable portions of amounts otherwise allowable as deductions for the taxable year under chapter 1 of the Code by reason of the rental use of the dwelling unit which would result in an adjustment to the basis of property are allowable to the extent the gross rental income exceeds the deductions allowed or allowable under subdivisions (i) and (ii) of this subparagraph. For purposes of this subparagraph, the portion of any item which is allocable to the rental use of a unit during a taxable year shall be that amount which bears the same relationship to the total amount of the item as the number of days on which the unit is rented at a fair rental during the taxable year bears to the number of days on which the unit is used for any purpose (other than repair or maintenance) during the taxable year.

10. Power to propose the Treasury Regulation in issue in this case originates from the Commissioner's general authority to prescribe helpful rules under 26 U.S.C. § 7805(a). It should also be noted that while a proposed regulation constitutes a body of informed judgment to which courts may draw on for guidance in the interpretation of relevant statutes, *cf. Ricards v. United States,* 652 F.2d 897, 902 n. 12 (9th Cir.1981), the Commissioner nevertheless con-

therefore consider the reasonableness of the Commissioner's interpretation of § 280A as applied to taxpayers and as put forth in the Proposed Regulation. Consideration must first be made of whether the Commissioner's interpretation "harmonizes with the statutory language." *United States v. Vogel Fertilizer Co., supra,* 455 U.S. at 25, 102 S.Ct. at 827; *National Muffler Dealers Assn. v. United States,* 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979). The legislative history and purpose behind the statute are also to be considered in determining whether the Commissioner has acted reasonably. *See United States v. Vogel Fertilizer Co., supra,* 455 U.S. at 26, 102 S.Ct. at 828. Should the Commissioner's as well as the taxpayer's interpretation of the statute be seen as reasonable, the rule in such a situation is that "[t]he choice among reasonable interpretations is for the Commissioner, not the courts." *National Muffler Dealers Assn. v. United States, supra,* 440 U.S. at 488, 99 S.Ct. at 1312. For the reasons outlined below, however, we conclude that the Commissioner overstepped the bounds of reasonableness in this case, and that the decision of the tax court should therefore be affirmed.

I. *The Statutory Language.*

The Commissioner's position is to allocate interest and taxes to gross rental receipts through use of the same fraction as that used for maintenance expenses specified in § 280A(e)(1): number of days rented/total number of days used. Yet subsection (e)(2) of § 280A continues:

(2) Exception for Deductions Otherwise Allowable. This subsection shall not ap-

ply with respect to deductions which would be allowable under this chapter for the taxable year whether or not such unit . . . was rented.

On the very face of the statute, then, it is apparent that the "number of days rented/total number of days used" fraction is not appropriate for allocating expenses such as interest and property taxes. The Commissioner argues, on the other hand, that the meaning of subsection (e)(2) is not plain, and that other interpretations are possible.[11] Thus, the Commissioner argues, the IRS interpretation should be accepted.

There is a major difficulty with the Commissioner's argument, however. Even if it is accepted that this subsection is subject to some different interpretation, the one fact that is clear is that subsection (e)(2) is not, from the face of the statute, subject to an interpretation along the lines of that sought by the Commissioner. Since this Court's task in the first instance is to determine the reasonableness of the Commissioner's interpretation, the Commissioner's argument as to the existence of other possible interpretations misses the focus of the analysis. The question is whether the *Commissioner's* interpretation is reasonable in the context of the language, legislative history and purpose of the statute. When solely the language on the face of the statute is considered, the Commissioner's interpretation cannot be upheld as reasonable.

II. *The Legislative History.*

The legislative history behind the statutory provisions at issue in this appeal does not

cedes that a proposed regulation still is not entitled to the deference due a final regulation.

11. The Commissioner suggests several alternate interpretations of subsection (e)(2). Each construction, however, appears highly unlikely when the plain language of this subsection, along with the language in the remainder of the statute, are considered. The Commissioner first suggests that subsection (e)(2) could be interpreted to mean either that the taxpayer is to apply the entire amount of the interest and tax deductions against the gross income from rentals, or that none of the taxes and interest deductions should be applied against the gross rental income. This argument, however, ig-

nores the language in § 280A(c)(5) that deductions for interest and property taxes be *allocated* between rental and nonrental use. The Commissioner further suggests that subsection (e)(2) could be interpreted to mean that the ratio should be determined by dividing all the days in the year when the unit was not actually used for personal purposes by the total number of days in the year (in this case resulting in a fraction of 335/365, or 92% of taxes and interest being allocated to business use). But this construction ignores the statute's obvious equating of business use with days rented, and therefore cannot be accepted.

adequately address the problem of the proper way to allocate interest and tax expenses. Indeed, both parties in their briefs admit that the legislative history is unclear on this point. The Commissioner nevertheless makes several arguments based on legislative history to support his position. He first argues that certain extracts of the committee reports discussing § 280A support the IRS interpretation of the statute. These extracts, however, are at best inconclusive, and do not support the Commissioner's position.[12]

The Commissioner also relies on legislative history in pointing out that prior to the enactment of § 280A, deductions for vacation homes were computed under the general guidelines for the "hobby loss" provisions of § 183. Thus, the Commissioner argues, § 183 and its regulations should be applicable to determining the interest and tax deductions under § 280A, and that these regulations support the Commissioner's method for making the § 280A allocation. This argument, however, is also faulty in that it ignores the language found in § 280A(f) which states that § 183 is not to apply at all to a unit if § 280A is applicable.[13] Moreover, such a position ignores the fact that § 280A was enacted in the first instance because § 183 was not working with respect to § 280A-type rental units. H.R.Rep. No. 94–658, 94th Cong., 2d Sess. at 162–64 (1976), *reprinted* in U.S.Code Cong. & Ad.News 3056–58. The § 183 "hobby

---

**12.** To support his argument that Congress intended the amount of the deductions to be based on the actual use of the unit, the Commissioner cites the House Ways and Means Committee as stating:

In addition, if there is any personal use of a vacation home, the portion of expenses allocable to rental activities should be limited to an amount determined on the basis of the ratio of time that the home is actually rented, to the total time the vacation home is used during the taxable year for all purposes (i.e., rental, business, and personal activities).

H.R.Rep. No. 94–658, 94th Cong., 2d Sess. at 164, *reprinted in* U.S.Code Cong. & Ad.News at 3058 (1976). This extract, however, is taken from a part of the committee report which speaks only in general terms of the reasons for changing the existing law through enacting § 280A. After evaluation of the report's discussion of the specific details of how the new § 280A provisions are to apply, it appears that this statement merely refers to the general effect the new law would have upon maintenance expenses—the context of the statement does not ascribe to it the importance the Commissioner would have it bear. Further, given the generality of the statements, taxpayer makes a valid point in arguing that the statement's parenthetical conclusion does not preclude using a concept of "use of property as an investment" as part of the allocation formula for interest and taxes, i.e., investment "use" would cover the entire year. Moreover, it should again be pointed out that acceptance of the Commissioner's interpretation of the legislative history would ignore and in effect render § 280A(e)(2) meaningless.

The Commissioner also points out that the Ways and Means Committee stated that:

If a taxpayer exceeds the personal use limitations for the vacation home for a taxable year, the deductions attributable to the rental activity are limited to the amount by which the gross income derived from the rental activity exceeds the deductions otherwise allowable with respect to such rental activities (e.g., interest and certain taxes). For this purpose deductions attributable to the rental activities are those items which are of a type allowable only as expenses incurred in connection with a trade or business or the production of income (e.g., sec. 162 or 212).

If the personal use limitation applies, the allowable deductions would be determined after first determining the expenses of the vacation home which are allocable to the rental activities (in accordance with the new allocation rules). H.R.Rep. No. 94–658, *supra*, at 165, *reprinted in* U.S.Code Cong. & Ad.News at 3058–59 (1976).

From this, the Commissioner argues that the computation for both maintenance expenses and interest and taxes be made "in accordance with the new allocation rules," which, the Commissioner maintains, means that the § 280A(e)(1) ratio based on actual use of the unit governs the allocation for all items. Again, the Commissioner's construction is strained. The statement could just as easily support the tax court decision which holds that more than one "new rule" exists for allocating expenses to rental activities.

**13.** Section 280A(f)(3)(A) provides in part:

*Coordination with section 183*—If subsection (a) applies with respect to any dwelling unit (or portion thereof) for the taxable year— (A) Section 183 (relating to activities not engaged in for profit) shall not apply to such unit (or portion thereof) for such year . . . .

loss" provisions are thus inapplicable to the issues in this appeal.[14]

The legislative history of § 280A as reflected in the committee reports demonstrates, if anything, a lack of support for the Commissioner's position. Both the Senate Finance Committee and House Ways and Means Committee state that the fraction, number days rented/total number of days used, is the proper way to allocate maintenance expenses. Both reports then add:

> However, the limitation (referring to the fraction) upon allocable expenses would not apply to expenses such as interest or taxes which are allocable even if not attributable to the rental activity. H.R. Rep. No. 94–658, 94th Cong., 2d Sess. at 166 (1976); Sen.Rep. No. 94–938, 94th Cong., 2d Sess. at 154 (1976); *both reprinted* in U.S.Code Cong. & Ad.News at 3060, 3587.

Thus, while the committee reports provide no guidance as to the specific method of allocating interest and taxes, they nevertheless show that the intent of Congress is contrary to the position taken by the Commissioner, and that use of the fraction found in subsection (e)(1) is not appropriate for allocating interest and taxes. This parallels the apparent intent of the facial language of § 280A(e)(2). In sum, neither the language on the face of § 280A nor its legislative history supports the Commission-

er's position with regard to interest and tax allocation under § 280A.

III. *Harmony with the Legislative Purpose: Tax Court v. Commissioner.*

The Commissioner finally argues that the tax court's method of computing the interest and tax allocation actually rewards the taxpayer with a higher deduction the less the unit is used for any purpose. As an example, the Commissioner points out that in the instant case, the taxpayers rented the unit for 91 days, or 25% of the time in 1976. He then contends that under the tax court's computation, taxpayers would be allowed to deduct a higher amount of maintenance expenses than they would have been allowed if the unit were rented for 120 days, or 33% of the year. The Commissioner maintains that this result would be counter to the congressional purpose behind § 280A that taxpayers not be allowed to convert personal expenses, such as maintenance and utilities, into deductible business items.

The Commissioner's argument, however, fails to consider the fact that if the unit were rented an additional 30 days as in his example, the gross rental figure for the unit, and likewise the ceiling on maximum deductions, would be higher. Thus, 33% of the interest and taxes (allocable to rental under the tax court's approach) would be taken from a *higher* gross rentals limit, not the same limit as the Commissioner's example assumes. The amount of allowed deductions for maintenance and depreciation expenses under the deduction limit would therefore increase in proportion to the in-

---

**14.** In support of his argument that § 183 provisions apply to § 280A, the Commissioner quotes the following extract from the Senate Finance Committee report:

> amounts allowable as deductions would be determined in the same manner as provided in the regulations prescribed under section 183 of the code.

Sen.Rep. No. 94–938, 94th Cong., 2d Sess. at 153, U.S.Code Cong. & Ad.News at 3585 (1976). As used by the Commissioner, however, this statement is out of context. This statement refers to deductions allowable *after*

calculating deductions allocable to the rental use. *See* Sen.Rep. No. 94–938, *supra* at 153; H.R.Rep. No. 94–658, *supra* at 165. The issue involved in this appeal concerns the method of allocating expenses. *Following* allocation, the procedure followed by § 280A and § 183 are identical: deductions allowable are subtracted from the gross rentals deduction limit in the order of interest and taxes first, other expenses (maintenance) second, and depreciation last. The method of allocation is the issue at hand; the quoted extract is not on point and irrelevant.

crease in days the unit is rented.[15]   Accordingly, taxpayers are not, as the Commissioner contends, rewarded with higher deductions for letting their unit stand idle. The Commissioner's argument as to legislative purpose is consequently misplaced. The argument further fails to consider that maintenance and utility expenses are first allotted between deductible rental/business and nondeductible personal expenses as per the fraction in § 280A(e)(1) prior to taking into account interest and taxes under the deduction limit.   Any maintenance expenses deductible after allocated interest and taxes are accounted for therefore have already been deemed potentially deductible business expenses.   Personal expenses are not converted into business expenses under the tax court's formula.

As pointed out earlier, neither the statute itself nor its legislative history address the issue of the proper approach to follow in making the § 280A interest and tax allocation.   The only clear point to be derived from these sources is the incorrectness of the Commissioner's interpretation.  The tax court's approach, however, is consistent with the legislative purpose of setting up a scheme whereby personal expenses are separated from the business expenses of rental homes.   Following the Commissioner's approach, the facts in this case would allow a deduction of only $94 of maintenance expenses for three months' worth of rental expenses, when the maintenance expenses on the unit for the year were $2,693.   The tax court's approach more evenly makes the allocation by determining that maintenance expenses, which tend to vary with occupancy rate, be allocated in accordance with occupancy (see § 280A(e)(1)) whereas those expenses which are allowable without regard to whether they are personal or not be allocated giving due regard to the method in which they accrue—in this case, taxes and interest accrue on a daily basis, regardless of property use.   At least one commentator feels that the allocation of taxes and interest over the entire year may have been so obvious to Congress that Congress did not believe it needed stating.   See W. Lathen, *Bolton: IRS "Bizarre" On Section 280A(e), 60 Taxes* 237, 239 (1982).   In summary, the Commissioner's interpretation of the statute is at odds with the language, history and legislative purpose behind § 280A.  "[A] challenged regulation is not a reasonable statutory interpretation unless it harmonizes with the statute's 'origin and purpose'."  *United States v. Vogel Fertilizer Co., supra,* —— U.S. at ——, 102 S.Ct. at 828, *quoting National Muffler Dealer's*

**15.**  To illustrate:

| | 90 Days Rented | | 120 Days Rented | |
|---|---|---|---|---|
| | Tax Court | Comm'r | Tax Court | Comm'r |
| Rental Income | 2700 | 2700 | 3600 | 3600 |
| Interest & Taxes | (868) | (2606) | (1157) | (2780)* |
| Ded. Maint. Expenses | (1832) | (94) | (2154)** | (820) |
| Ded. Depreciation | 0 | 0 | (289)*** | 0 |
| Net Income | 0 | 0 | 0 | 0 |

*Days rented (120) divided by total days occupied (150) times total interest and taxes ($3,475) equals $2,780.

**Days rented (120) divided by total days occupied (150) times total maintenance ($2,693) equals $2,154.

***After subtracting the allocation for taxes and interest, there remains room under the gross rentals deduction ceiling for $2,443 in deductions.   Since potentially deductible maintenance expenses come to only $2,154, there is room left to deduct $289 in depreciation on the rental unit.

Using the tax court's allocation method, the amount of deductible maintenance and depreciation expenses under the deduction limit increase (from $1,831 to $2,443) in proportion to the increase in days rented.   As taxpayers point out, it is also interesting to note in the above example that the Commissioner's method allows the deduction for maintenance expenses to increase lopsidedly as a result of increasing the rental days by 33.3% (from $94 to $820, or 772%).

*Assn. v. United States, supra,* 440 U.S. at 477, 99 S.Ct. at 1307. The approach of the tax court, on the other hand, is reasonable and consistent with the purpose and history behind the statute and the language of the statute itself. The Commissioner's interpretation must accordingly be rejected, and the approach of the tax court given deference.[16] The decision of the tax court is therefore affirmed.

AFFIRMED.

**16.** It should be noted that an earlier memorandum opinion of the tax court followed the Commissioner's approach in applying the § 280A(e)(1) formula to interest and tax expenses. *McKinney v. Commissioner,* 41 T.C.M. 1272 (1981). This opinion, however, does not take subsection (e)(2) into account, nor was the issue as to the allocation method to be used for interest and taxes under § 280A(c)(5) raised or briefed by the parties. The opinion therefore bears no weight in the instant discussion.