TERRY COLTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Colton v. Commissioner
Docket No. 17533-84.
United States Tax Court
T.C. Memo 1986-5; 1986 Tax Ct. Memo LEXIS 604; 51 T.C.M. (CCH) 236; T.C.M. (RIA) 86005; January 6, 1986. Terry Colton, pro se. Blake W. Ferguson, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a) [1]
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1980
$6,188.00
$309.40
1981
9,162.00
$775.00
458.10 *
After concessions, the issues for decision are whether petitioner had unreported income, whether he is entitled to deductions in relation to rental of space in his residence, and whether he is liable for additions to tax for negligence and for late filing of his 1981 return. FINDINGS OF FACT Petitioner was a resident of Wasilla, Alaska, at the time he filed his petition herein. During the years 1980 and 1981, *607 he was employed by Otis Engineering Corporation, conducted a photography business, and owned rental property in Omaha, Nebraska, and Battle Lake, Minnesota. Losses from the photography business were reported on Schedules C to his returns, and losses from the real property rentals were reported on Schedules E to his returns. On his returns for 1980 and 1981, petitioner claimed deductions of $10,073 and $15,874, respectively, for contributions to the Universal Life Church. During the years in issue, petitioner maintained a bank account in the name of Universal Life Church as well as several bank accounts in his own name. Deposits into and disbursements from the account maintained in the name of the church related primarily to maintenance of a large house occupied by petitioner and by various other persons at different times during the years in issue. The persons occupying the house from time to time made contributions to the expenses of maintaining the house, groceries, and automobile expenses. The amounts paid by persons other than petitioner were not based solely on periodic costs but were based in substantial part on the person's ability to pay, if any. Petitioner's willingness *608 to provide housing for various individuals without charging a specified amount as rent was based on his experience when he first arrived in Alaska without assets or employment.Petitioner was assisted by one or more individuals until he established himself, and, consistent with a tradition in Alaska, [2] resolved that, when he was able to do so, he would assist others who came to Alaska under similar circumstances. Petitioner's return for 1981 was signed by him on or about April 8, 1982, and returned to his preparer for handwritten corrections and mailing. The return was stamped received by the Internal Revenue Service on June 25, 1982. No extension of time for filing the return was obtained. Respondent examined petitioner's returns for 1980 and 1981 and, *609 based on analysis of petitioner's bank accounts, determined that he had additional income of $10,898 in 1980 and $7,592 in 1981. Respondent also determined that, in 1980, petitioner had additional interest income of $104 and income of $325 from a state tax refund. Respondent disallowed the contribution deductions claimed with respect to the Universal Life Church. At the time of trial, petitioner conceded that he had additional interest income in the amount determined by respondent and that he was not entitled to the deductions claimed for contributions to the Universal Life Church. Respondent conceded that petitioner did not have income in 1980 from a state tax refund. Petitioner then claimed that most of the unexplained deposits determined by respondent to be additional income were income from nontaxable reimbursements or rents paid by the other occupants of his house and that such rents were more than offset by expenses relating to the house. Petitioner presented proposed amended Schedules E showing purported losses from rental of the house, assuming 75 percent rental use, of $6,346 in 1980 and $9,046 in 1981. OPINION Petitioner has the burden of proving that respondent's *610 determination is incorrect as to the amount of the deficiencies and the additions to tax, and he must also establish that he is entitled to the additional deductions that he claims. Welch v. Helvering,290 U.S. 111 (1933); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Bixby v. Commissioner,58 T.C. 757 (1972); Rule 142(a), Tax Court Rules of Practice and Procedure.
During trial, petitioner described the manner in which he conducted his home as a "boarding house" and identified to respondent's satisfaction some nontaxable reimbursements reflected in the bank deposits analysis used by respondent to determine that petitioner had unreported income. After trial, the parties reached further agreement on some items, thereby reducing the amount remaining in dispute. Respondent now contends that the unreported income reflected in the bank deposits analysis is $5,722.21 for 1980 and $4,991.83 for 1981. Respondent contends that petitioner has not shown that he overcomes section 262, or is not limited to the amount of deductions authorized under sections 183 and 280A. Petitioner claims that three-fourths of his residence was rented *611 to tenants and that the tenants should be distinguished from "guests" who were allowed to stay with little or no charge. Petitioner's post-trial assertions in his brief, however, are not supported by his testimony at trial and are inconsistent with his earlier claims that the home was operated as a church. In an addendum sheet to his petition, for example, petitioner asserted that the amounts originally claimed as contributions to the Universal Life Church were "charity for the purpose of helping the homeless, feeding the hungry, employing the unemployed, and otherwise providing assistance when and where help was needed * * *." Petitioner's later attempt to reclassify for tax purposes the costs of his home is accompanied by the claim that as a "landlord," he was providing food, an automobile, and "atmosphere" to his "tenants." The taxpayer generally may deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business or for the management, conservation, or maintenance of property held for the production of income. Sections 162(a), 212(2). To qualify for deductions under either section 162(a) or section 212(2), the taxpayer must have engaged in the activity *612 with an actual and honest profit objective. See Dreicer v. Commissioner,78 T.C. 642, 646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Jasionowski v. Commissioner,66 T.C. 312, 319-324 (1976). Thus no deduction generally is allowable for personal, living, or family expenses. Section 262. Profit objective is a question of fact to be determined from all the facts and circumstances, and greater weight is to be given to the objective facts than to a mere declaration of the taxpayer's intent. Section 1.183-2(a), Income Tax Regs.; Engdahl v. Commissioner,72 T.C. 659, 666 (1979). Congress concluded, however, that the general "facts and circumstances" test was inadequate for determining the deductibility of expenses associated with a home used for both rental and personal purposes. Congress therefore enacted section 280A in the Tax Reform Act of 1976, Pub. L. 94-455, sec. 601, 90 Stat. 1525, 1569. Section 280A provides definitive rules for the deduction of such expenses. See H. Rept. No. 94-658 (1975), 1976-3 C.B. (Vol. 2) 695, 854-856; S. Rept. No. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 188-190. *613 Section 280A(a) provides the general rule that no deduction is allowable "with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." Subsection (c) of section 280A lists exceptions to the general rule. The exceptions include "any item which is attributable to the rental of the dwelling unit or portion thereof (determined after the application of subsection (e))." Subsection (e) requires a taxpayer who uses the dwelling unit for personal purposes during the taxable year, as a residence or otherwise, to limit his deductions for expenses other than those otherwise allowable (such as mortgage interest and taxes) to the amount determined after applying the percentage obtained by comparing the number of days the unit (or portion thereof) is rented at a fair rental to the total number of days the unit (or portion thereof) is used. Bolton v. Commissioner,77 T.C. 104 (1981), affd. 694 F.2d 556 (9th Cir. 1982). Paragraph (5) of section 280A(c) further limits deductions for rental use of a residence to the excess of the gross rental income over the portion of the otherwise allowable expenses that are attributable *614 to the rental use. In other words, any net rental loss cannot be offset against unrelated income. This latter limitation operates analogously to section 183(b), which allows certain deductions for expenses in relation to an activity not engaged in for profit. H. Rept. No. 94-658, supra, 1976-3 C.B. (Vol. 2) at 857; S. Rept. No. 94-938, supra, 1976-3 C.B. (Vol. 3) at 191. To be entitled to any deductions, either against unrelated income or as an offset to amounts received from persons residing in the house with him, petitioner must satisfy the conditions of the above sections. We conclude that he has not done so. The record indicates that petitioner's home constituted a single "dwelling unit" as defined in section 280A(f)(1), [3] which petitioner "used as a residence" as defined in section 280A(d).[4] Petitioner contends that tenants occupied three of four "apartments" in the house, but his description of the physical layout of the residence is vague. His testimony in this regard is notably uncorroborated by any tenant or other witness, and, from the absence of corroboration, we infer it does not exist. See Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158 (1946), *615 affd. 162 F.2d 513 (10th Cir. 1947). The facts do not justify the conclusion that petitioner used any portion of his home exclusively as a "hotel, motel, inn, or similar establishment." Therefore, any deductions associated with petitioner's rental of his home are subject to the limitations of subsections (e) and (c)(5) of section 280A. *616 Although petitioner asserts that rents were paid on the basis of fair market value, he has provided no independent evidence of fair market value or even specific testimony as to the identity of the tenants and the contractual relationships with them. In light of petitioner's pre-trial position in this case, we cannot accept his uncorroborated assertions. Subsection (e) thus limits petitioner's deductions to expenses that are "otherwise allowable." We are similarly unpersuaded by petitioner's belated assertions that he was engaged in a rental activity for profit. His original claims of charitable intent and his description of the living arrangements at his residence are more consistent with a good-natured sharing arrangement, based on a need for companionship and a desire to abide by the Golden Rule, i.e., to do under others as was done for him. Having carefully reviewed the record, including petitioner's explanation and respondent's concession as to many of the previously unexplained deposits, we conclude that, to the extent otherwise unexplained, substantially all of the deposits were "rent" for the use of his dwelling. On his tax returns for the years in issue, petitioner *617 claimed itemized deductions as follows: 1980
1981
Home Mortgage Interest
$6,442
$5,559
Real Estate Taxes
741
525
Total
$7,183
$6,084
If we assume that petitioner is entitled to claim 75 percent of the above expenses as attributable to rental of his home, amounts recharacterized and deducted against rental receipts ($5,722.21 in 1980 and $4,991.83 in 1981) would be $5,387 in 1980 and $4,563 in 1981. Petitioner's personal itemized deductions would be reduced by the amounts recharacterized. Because his original return claimed improper deductions for contributions to the Universal Life Church, the additions to tax for negligence will be sustained. See Hall v. Commissioner,729 F.2d 632, 635 (9th Cir. 1984); Davis v. Commissioner,81 T.C. 806 (1983), affd. in an unpublished opinion 767 F.2d 931 (9th Cir. 1985). With respect to the addition to tax for late filing of his 1981 return, petitioner speculates that an error in reflecting the date of receipt was made by an employee of the Internal Revenue Service. Although the scenario that petitioner hypothesizes is not impossible, it is unlikely, and there *618 is no reason to believe that it happened in this case. The only conclusion supported by the evidence is that petitioner delivered the tax return to his preparer for correction and mailing, and the preparer failed to timely mail the return. Even if petitioner relied in good faith on his preparer to mail the return, he must bear the consequences of the late filing. United States v. Boyle,469 U.S.    , 105 S. Ct. 687 (1985). Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. * Amount to be determined.↩
2. Petitioner invites the Court to return to Alaska to observe that petitioner's operations with respect to his house are consistent with normal practices in that state. We accept petitioner's representations in this regard. See J. McPhee, "Coming Into the County" 6th ed. (1981). The tax consequences of the activity, however, depend on application of the statutes, not approval or disapproval of petitioner's lifestyle.↩
3. (1) Dwelling Unit Defined.--For purposes of this section-- (A) In general.--The term "dwelling unit" includes a house, apartment, condominium, mobile home, boat, or similar property, and all structures or other property appurtenant to such dwelling unit. (B) Exception.--The term "dwelling unit" does not include that portion of a unit which is used exclusively as a hotel, motel, inn, or similar establishment. ↩
4. (d) Use as Residence.-- (1) In general.--For purposes of this section, a taxpayer uses a dwelling unit during the taxable year as a residence if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of-- (A) 14 days, or (B) 10 percent of the number of days during such year for which such unit is rented at a fair rental. For purposes of subparagraph (B), a unit shall not be treated as rented as a fair rental for any day for which it is used for personal purposes. (2) Personal Use of Unit.--For purposes of this section, the taxpayer shall be deemed to have used a dwelling unit for personal purposes for a day if, for any part of such day, the unit is used-- (A) for personal purposes by the taxpayer or any other person who has an interest in such unit, or by any member of the family (as defined in section 267(c)(4)) of the taxpayer or such other person;↩