BRUCE MARTIN DINSMORE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dinsmore v. Commissioner
Docket No. 27459-91
United States Tax Court
T.C. Memo 1994-134; 1994 Tax Ct. Memo LEXIS 128; 67 T.C.M. (CCH) 2537; March 30, 1994, Filed *128 Decision will be entered for respondent. R disallowed P's claimed Schedule C and Schedule E deductions and determined certain additions to tax. Held: For purposes of sec. 183, I.R.C., P was not engaged in an activity for profit. Held, further, P's deductions in connection with the rental of a dwelling unit are limited to the amount of gross rental income received pursuant to sec. 280A, I.R.C.Held, further, P is liable for additions to tax under sec. 6653(a)(1), I.R.C., for 1985, and sec. 6653(a)(1)(A), I.R.C., for 1986. For petitioner: Carlton V. Phillips, Jr.
For respondent: T. Elizabeth Stetson. NIMS
NIMS
MEMORANDUM FINDINGS OF FACTS AND OPINION NIMS, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax liability as follows: Additions to Tax
Year
Deciciency Sec. 6653(a)(1) Sec. 6653(a)(1)(A)
1985
$ 21,767
[1] $ 1,088.35
1986
3,188
[1] $ 159.40
Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years in *129 issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Petitioner concedes a $ 100 dividend received deduction. The remaining issues for decision are: 1. Whether petitioner's Schedule C activity was an activity engaged in for profit within the meaning of section 183 during 1985. 2. Whether petitioner is entitled to deductions in connection with the rental of a dwelling unit in excess of gross rental income. 3. Whether petitioner is liable for additions to tax pursuant to section 6653(a)(1) for 1985 and section 6653(a)(1)(A) for 1986. FINDINGS OF FACT
Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Stanton, California, at the time he filed his petition. Background
Petitioner and his former spouse, Rita, were married on August 12, 1966, and have two children. They separated on September 15, 1983, and began divorce proceedings on February 23, 1984. Their divorce became final on August 27, 1985. Subsequent to the divorce, Rita married James D. Thomas (James). Petitioner and Rita entered into a Marital Settlement Agreement *130 (Agreement) which provided for an equal division of their community assets. The Agreement provided that all monies owed to Rita would be due and payable upon the date of the Judgment of the Dissolution of Marriage. The Agreement provided that beginning in September of 1985, petitioner would pay to Rita $ 1,500 monthly per child for the support of their two children. The Agreement further provided that any deficiency in Federal income taxes, together with penalties and interest, of either party through 1985 would be paid equally by the parties out of their separate property. Petitioner gave Rita a cashier's check for $ 10,000 on September 23, 1985, and another cashier's check for $ 12,500 on November 21, 1985. Additionally, during 1985 and 1986 petitioner forwarded sums of money to Rita to pay for the support of their two children and to pay for her studies at law school. Petitioner moved to Alaska in April of 1984 and resided there throughout 1985 and 1986, during which time he worked as a petroleum engineer for ARCO, Inc. Petitioner's job title was Operations Supervisor and he was responsible for keeping the oil flowing through a pipeline. Although petitioner worked out of *131 an office in Anchorage, he spent considerable time on the North Slope of Alaska, which is some 800 miles from Anchorage. ARCO, Inc. was in partnership with other companies to operate the Trans-Alaska Pipeline, and part of petitioner's responsibilities included working on the Trans-Alaska Pipeline which took him to different parts of the United States. The remote job locations coupled with frequent traveling made it difficult for petitioner to manage his personal business affairs. Petitioner's 1985 Schedule C Activity
In 1984, Rita established a Select Care distributorship. Select Care is a line of dog grooming products marketed in a manner similar to that of Amway. On their joint 1984 Federal income tax return, petitioner and Rita reported a loss of $ 14,427 from Rita's Select Care distributorship. At the end of 1984, based on Rita's opinion about the viability of a Select Care distributorship and after seeking the business advice of an attorney, petitioner purchased a Select Care distributorship from Rita. Petitioner's stated motivation for undertaking the distributorship was so that his "son could actually make some real profit out of it." When petitioner began his *132 Select Care activity in 1985, he had no previous marketing or telemarketing experience. Except for brief interruptions for graduate school and military service, petitioner worked as an engineer from the time he graduated from college in 1964 throughout the years in issue. Select Care was to be a joint effort between petitioner, who was responsible for the capital infusion; his son, who was to deliver the products to retailers and consumers; and Rita, who was to supervise their son and manage the daily operations and the paperwork. Petitioner had given Rita a power of attorney to facilitate the operation of his business activities. There was a business checking account opened at First Interstate Bank, Orange, California -- account number 122000218-248122308 (the First Interstate account). The money deposited into this account came from credit card sales and house rental payments from James. However, petitioner was not authorized to sign checks on or withdraw funds from or otherwise control the First Interstate account in any manner during 1985 and 1986. During the months of September through November of 1985, petitioner's Select Care activity involved the use of a telemarketing *133 firm to contact potential customers and solicit orders from them. All credit card sales and refunds related to the telemarketing efforts were accounted for through the First Interstate account. During 1985 and 1986, petitioner was authorized to sign checks on and withdraw funds from and otherwise control only one bank account -- account number 435609434-0 at Atlantic Federal Credit Union in Anchorage, Alaska (the Atlantic Federal Credit account). On petitioner's 1985 Schedule C, Profit or Loss From Business or Profession, petitioner reported gross receipts of $ 5,662 and deductions of $ 36,394, resulting in a loss of $ 30,732 from his Select Care activity. In 1985, notwithstanding the Schedule C losses, petitioner had net taxable income of $ 73,748. Facts relating to petitioner's 1985 and 1986 Schedule E
In July of 1984, petitioner and Rita purchased property at 481 N. Seranado Street, Orange, California (the N. Seranado Street house). They jointly borrowed $ 113,500 from South Bay Savings and Loan Association to finance the purchase. They held title to the property as Bruce M. Dinsmore and Rita P. Dinsmore, Husband and Wife. In August of 1988, petitioner transferred *134 by Quitclaim Deed to Rita any interest he owned at that time in the property. Rita and James lived in the N. Seranado Street house from July of 1984 throughout 1985 and 1986. Petitioner and Rita's two children also resided at the N. Seranado Street house throughout 1985 and 1986. During 1985 and the first 6 months of 1986, petitioner rented the N. Seranado Street house to James for $ 950 a month, as evidenced by a rental agreement for 1985. In 1985, petitioner's Schedule E, Supplemental Income Schedule, reported $ 11,400 in total rents received from the N. Seranado Street house. Petitioner deducted expenses of $ 125 for cleaning and maintenance, $ 739 for insurance, $ 12,323 for mortgage interest paid to financial institutions, $ 3,127 for repairs, $ 1,179 for taxes, and $ 10,058 for depreciation. Petitioner claimed a $ 16,151 loss from the N. Seranado Street house in 1985. Respondent disallowed petitioner's claimed loss. The following amounts were expended on the house in 1985: (a) $ 125 for cleaning and maintenance, (b) $ 739 for insurance, (c) $ 12,323 for mortgage interest paid to financial institutions, (d) $ 3,127 for repairs, and (e) $ 1,179 for property taxes. The *135 amount of depreciation expense for 1985 was $ 9,440. In 1986, petitioner's Schedule E reflected $ 5,700 in total rents received from the N. Seranado Street house. Petitioner deducted expenses of $ 416 for insurance, $ 6,119 for mortgage interest paid to financial institutions, $ 592 for taxes, and $ 5,215 for depreciation. Petitioner claimed a $ 6,642 loss from the N. Seranado Street house in 1986. Respondent disallowed petitioner's claimed loss. The following amounts were expended on the house in 1986: (a) $ 416 for insurance, (b) $ 5,861 mortgage interest paid to financial institutions, and (c) $ 592 for property taxes. The amount of depreciation expense for 1986 was $ 5,177. Schedule E contains the question-"For each property listed, did you or a member of your family use for personal purposes any of the properties for more than the greater of 14 days or 10% of the total days rented at fair rental value during the tax year?" On both the 1985 and 1986 returns petitioner answered this question "No." Petitioner prepared his own 1985 and 1986 individual Federal income tax returns, but relied heavily on Rita, who told him what numbers to use on his Schedule C. OPINION The *136 first matter for our consideration is petitioner's Schedule C activity. Petitioner argues that he entered into this activity for profit. Respondent argues that petitioner's activity was not engaged in for profit within the meaning of section 183. Alternatively, respondent argues that the Select Care activity was Rita's activity and accordingly petitioner is not allowed to deduct expenses which were either Rita's or incurred for her benefit. For reasons hereafter given, we hold that petitioner's Select Care activity was not engaged in for profit, and therefore we need not address respondent's alternative argument. An activity is engaged in for profit if the taxpayer has an actual and honest objective of making a profit. Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982) affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). In making this determination, all facts and circumstances with respect to the activity are to be taken into account. Sec. 1.183-2(b), Income Tax Regs.
The regulations promulgated under section 183 list nine relevant factors to be considered when determining whether an activity is engaged in for profit: *137 (1) The manner in which the taxpayer carried on the activity, (2) the expertise of the taxpayer or his advisers, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the expectation that assets used in the activity may appreciate in value, (5) the success of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayer's history of income or loss with respect to the activity, (7) the amount of occasional profits, if any, which are earned, (8) the financial status of the taxpayer, and (9) the extent to which elements of personal pleasure or recreation are involved. Sec. 1.183-2(b), Income Tax Regs. This list is not exclusive and no one factor is to be determinative. Id. The determination is not to be made on the basis that the number of factors supporting a lack of a profit objective outweighs the number of factors supporting a profit objective and vice versa. Id.Petitioner bears the burden of proving his profit objective. Rule 142(a). One of the factors to be considered is the manner in which the taxpayer carried on the activity. Sec. 1.183-2(b)(1), Income Tax Regs. Petitioner has not, in our judgment, carried on *138 the activity in a businesslike manner. He has failed to keep and submit any formal or informal bookkeeping records, bank statements, canceled checks, or records of any credit card transactions, which would tend to prove otherwise. Likewise, petitioner has failed to submit evidence of the distributorship agreement. The lack of evidence of this nature indicates that petitioner did not pursue the activity in a manner sufficiently businesslike to show an actual and honest profit objective. In preparing for an activity, a taxpayer need not make a formal market study, but should undertake a basic investigation of the factors that would affect profit. Underwood v. Commissioner, T.C. Memo. 1989-625; Burger v. Commissioner, T.C. Memo. 1985-523, affd. 809 F.2d 355 (7th Cir. 1987). Petitioner was formally trained as an engineer and had worked as such for some 20 years. At the time petitioner undertook his Select Care activity he had no training or experience with marketing products of any kind. The only business advice petitioner sought was that of an attorney. He also placed a heavy reliance on *139 Rita's opinion because she had established her own Select Care distributorship the previous year. We point out that Rita's foray into Select Care resulted in a $ 14,427 loss in 1984, which we believe should have given petitioner some indication of the venture's chances for profitability or lack thereof. Another factor to be considered is the time and effort expended by petitioner in carrying on the activity. Sec. 1.183-2(b)(3), Income Tax Regs. Petitioner's job with ARCO, Inc. required him to be much of the time either in Alaska or traveling throughout the United States. In fact petitioner indicated that he found it difficult to manage his personal business affairs and to this end he heavily relied upon Rita to take care of the daily operations of his Select Care activity. Furthermore, he had no actual control over the business checking account, instead relying on Rita to make the deposits and to write the checks. In sum, it appears that petitioner expended very little time and effort on his Select Care activity. Petitioner's Select Care activity did not involve assets that could be expected to appreciate, nor had petitioner been involved in any prior similar or dissimilar *140 activities. See sec. 1.183-2(b)(4) and (5), Income Tax Regs. Although petitioner's activity was limited to one year, 1985, and he had not thus encountered a history of losses from his Select Care activity, we think it is significant that petitioner and Rita reported a loss for 1984 attributable to her Select Care activity in that year. See sec. 1.183-2(b)(7), Income Tax Regs.
Petitioner's 1985 net Federal taxable income was $ 73,748, notwithstanding his substantial Select Care loss. It is apparent that petitioner did not need to engage in the Select Care activity to provide himself with a reasonable living, and indeed petitioner's high earnings offered an incentive for claiming a tax loss from the Select Care activity. See sec. 1.183-2(b)(8), Income Tax Regs.
The Regulations provide that "The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved." Sec. 1.183-2(b)(9), Income Tax Regs. Petitioner established his Select Care activity so that he could eventually turn it over to his son. It appears that petitioner placed more value on setting *141 his son up in business than he placed on Select Care's profitability. For these reasons we find that petitioner's primary motivation was more personal in nature than it was profit oriented. After review of the record, we conclude that petitioner did not meet his burden of proving that his Select Care activity was engaged in for profit; therefore, we hold that it was an activity not engaged in for profit within the meaning of section 183. We now turn to petitioner's loss in connection with the rental of the N. Seranado Street house. On both of his 1985 and 1986 Schedules E petitioner claimed deductions exceeding gross rental income which resulted in a loss. Respondent determined that petitioner was not entitled to the losses. Petitioner bears the burden of proving that he is entitled to claim the losses resulting from the rental of the N. Seranado Street house. Rule 142(a). Petitioner argues for the first time on brief that the N. Seranado Street house was a multi-unit dwelling and that all expenses related to the rental portion of such multi-unit dwelling are fully deductible. The record does not support a finding that the N. Seranado Street house was a multi-unit dwelling. *142 Petitioner makes no other argument to support his entitlement to the rental losses. Respondent argues that section 280A precludes petitioner from claiming the rental loss in connection with the N. Seranado Street house because his wife and children lived in the house. In the alternative, respondent argues that petitioner did not establish that the rental of the N. Seranado Street house was an income-producing activity pursuant to section 212 and that petitioner did not show that he incurred the expenses claimed in connection with the house. For 1985 and 1986, the relevant portions of section 280A provided: (a) General Rule. -- Except as otherwise provided in this section, in the case of * * * an individual * * * no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. (b) Exception for Interest, Taxes, Casualty Losses, Etc. -- Subsection (a) shall not apply to any deduction allowable to the taxpayer without regard to its connection with his trade or business (or with his income-producing activity). (c) Exceptions for Certain Business or Rental Use; *143 Limitation on Deductions for Such Use. -- * * * (3) Rental Use. -- Subsection (a) shall not apply to any item which is attributable to the rental of the dwelling unit or portion thereof (determined after the application of subsection (e)). * * * (5) Limitation on Deductions. -- In the case of a use described in paragraph * * * (3) where the dwelling unit is used by the taxpayer during the taxable year as a residence, the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of -- (A) the gross income derived from such use for the taxable year, over (B) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used.
(d) Use as Residence. -- (1) In General. -- For purposes of this section, a taxpayer uses a dwelling unit during the taxable year as a residence if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of -- (A) 14 days, or (B) 10 percent of the number of days during such year for which such unit is rented at a fair rental. For purposes *144 of subparagraph (B), a unit shall not be treated as rented at a fair rental for any day for which it is used for personal purposes. (2) Personal Use of Unit. -- For purposes of this section, the taxpayer shall be deemed to have used a dwelling unit for personal purposes for a day if, for any part of such day, the unit is used -- (A) for personal purposes by the taxpayer or any other person who has an interest in such unit, or by any member of the family (as defined in section 267(c)(4)) of the taxpayer or such other person; * * * (3) Rental to family member, etc., for use as principal residence. -- (A) In general. A taxpayer shall not be treated as using a dwelling unit for personal purposes by reason of a rental arrangement for any period if for such period such dwelling unit is rented, at a fair rental, to any person for use as such person's principal residence. * * * (e) Expenses Attributable to Rental. -- (1) In General. -- In any case where a taxpayer who is an individual or an S corporation uses a dwelling unit for personal purposes on any day during the taxable year (whether or not he is treated under this section as using such unit as a residence), the amount deductible *145 under this chapter with respect to expenses attributable to the rental of the unit (or portion thereof) for the taxable year shall not exceed an amount which bears the same relationship to such expenses as the number of days during each year that the unit (or portion thereof) is rented at a fair rental bears to the total number of days during such year that the unit (or portion thereof) is used. * * * (f) Definitions and Special Rules. -- (1) Dwelling Unit Defined. -- For purposes of this section -- (A) In General. -- The term "dwelling unit" includes a house, apartment, condominium, mobile home, boat, or similar property, and all structures or other property appurtenant to such dwelling unit.
In 1985 and 1986, section 267(c)(4) provided: (4) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; * * * In summary, with certain limited exceptions, section 280A disallows deductions related to the use of a dwelling unit which is also used by a taxpayer or his family as a residence. One of the exceptions, relevant in this case, relates to deductions allowable without regard *146 to business or income-producing activities, e.g., home mortgage interest, taxes, and casualty losses. See Bittker & Lokken, Federal Taxation of Income, Estates and Gifts, par. 22.6.2 at 22-68 (2d ed. 1989). As stated, the general rule of 280A(a) is that no deductions will be allowed to a taxpayer who uses a dwelling unit as a residence. Petitioner's N. Seranado Street house is a dwelling unit by virtue of section 280A(f)(1)(A), quoted above. Petitioner used the N. Seranado Street house as a residence during the relevant time period. Petitioner's use stems not from his actual use of the N. Seranado Street house, but from the fact that his two children lived at the N. Seranado Street house during the relevant time period. Sec. 280A(d); sec. 267(c)(4). We also note that petitioner and Rita were married until August 27, 1985, and that Rita, as petitioner's wife, was also a member of his family. Sec. 267(c)(4). Petitioner is deemed to have used the N. Seranado Street house for personal purposes by virtue of section 280A(d)(2) because a member of his family used the N. Seranado Street house for personal purposes. Petitioner's deemed personal use of the N. Seranado Street house *147 for more than 14 days, and for more than 10 percent of the number of days during which the dwelling unit was rented, results in his having used the N. Seranado Street house as a residence during the entire time the unit was rented. Sec. 280A(d)(1). Section 280A(c) lists exceptions to the general disallowance rule of section 280A(a). Section 280A(c)(3) allows deductions attributable to the rental of the dwelling unit, subject to section 280A(e). Section 280A(e) requires a taxpayer who uses a dwelling unit for personal purposes during the taxable year, as a residence or otherwise, to limit his deductions to the amount determined after applying the percentage obtained by comparing the number of days the unit (or portion thereof) is rented to the total number of days the unit (or portion thereof) is actually used (for any purpose). Bolton v. Commissioner, 77 T.C. 104 (1981), affd. 694 F.2d 556 (9th Cir. 1982). Since the dwelling unit in this case was rented 100 percent of the time it was used, this limitation would not affect petitioner's deductions. Section 280A(c)(5), however, further limits the deductions to the excess *148 of the gross rental income over the portion of the expenses otherwise allowable (such as mortgage interest and taxes) that are attributable to the rental activity. In other words, a taxpayer cannot claim a net rental loss when he rents out a dwelling unit that he also uses as a residence. We conclude that petitioner's deemed use of the N. Seranado Street house as a residence precludes him from recognizing a loss arising from the rental of the house, and we sustain respondent's determination. In light of the foregoing we need not address respondent's remaining alternative argument. Lastly we turn to the issue of whether petitioner is liable for additions to tax pursuant to section 6653(a). We note that petitioner bears the burden of proof as to this issue. Rule 142(a). Petitioner, without citing supporting authority, asserts that he is not negligent because by making a full accounting of his activities, even though the information may have been incorrectly placed on his returns, he made a good faith effort to comply. Respondent contends that petitioner is liable for the additions to tax because on both of his Schedules E he knowingly answered "no" to the question asking whether *149 a member of his family lived in the N. Seranado Street house. Respondent further contends that petitioner is liable because he did not examine any documentation in preparing his returns, but rather relied upon Rita to supply him with the needed information. Under section 6653 "negligence" includes any negligent failure by the taxpayer to keep adequate books and records or to substantiate items properly. The term "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. We have found no authority to support petitioner's contentions. Petitioner, by not maintaining adequate books and records and by intentionally disregarding the rules or regulations when answering that no member of his family lived in the N. Seranado Street house, was negligent. Accordingly, we sustain respondent's determination of the additions to tax under section 6653(a). Decision will be entered for respondent.
Footnotes
1. Plus 50 percent of the interest payable with respect to the portion of such underpayment which is attributable to negligence.↩