PETER C. OSBORNE AND PATRICIA L. OSBORNE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Osborne v. Commissioner
Docket No. 29901-85.
United States Tax Court
T.C. Memo 1987-553; 1987 Tax Ct. Memo LEXIS 545; 54 T.C.M. (CCH) 1014; T.C.M. (RIA) 87553; November 2, 1987; As amended November 6, 1987 George M. Foote, Jr., for the petitioners. [Text Deleted by Court Emendation] Richard J. Wood, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the year ending December 31, 1982 in the amount of $ 700. *548 Some of the issues raised by the pleadings have been disposed of by agreement of the parties leaving for decision whether certain property, owned by petitioner Patricia L. Osborne in Hillcrest Heights, Maryland was held for production of income or in an activity entered into for profit within the meaning of sections 212 of 183 [1] so as to entitle petitioner to deductions for expenses with respect to and depreciation on the property and, in any event, whether petitioners are precluded from claiming these deductions by the provisions of section 280A. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Cockeysville, Maryland at the time of the filing of their petition in this case, filed their Federal income tax return for the calendar year 1982 with the Internal Revenue Service Center in Philadelphia, Pennsylvania. On January 21, 1982, Patricia L. Osborne (petitioner) *549 purchased from Doris Osborne and Matthew Osborne (the senior Osbornes) property located at 3803 24th Avenue, Hillcrest Heights, Maryland (the Hillcrest Heights property). The purchase price for the property was $ 90,000 payable over 30 years in 360 equal installments of $ 250 with zero percent interest. The senior Osbornes are the parents of petitioner Peter C. Osborne. On January 23, 1982 petitioner executed a note for $ 90,000 in favor of the senior Osbornes secured by a deed of trust on the Hillcrest Heights Property. On January 29, 1982 petitioner leased the Hillcrest Heights property to the senior Osbornes. The lease was for a term of 14 years and called for a monthly rental payment of $ 0.00. The lease contained provisions for payment of utilities and cost of repairs, except interior repairs, by petitioner. Interior repairs were to be made by the senior Osbornes. On their 1982 Federal income tax return petitioners claimed deductions for expense, including insurance and utilities, and for depreciation in connection with the Hillcrest Heights property. Respondent disallowed those deductions on the bases that petitioners had failed to establish that the property was *550 held for the production of income, and that even if the property was held for the production of income, no deductions were allowable because the property was held as a residence and used for personal purposes within the meaning of section 280A. OPINION Petitioner contends that she is entitled to expense deductions and depreciation on the house in Hillcrest Heights under section 212[2] because the property is held for the production of income or in a transaction entered into for profit under section 183. Petitioners' primary contention is that the property would produce income when sold or rented after the lease to the senior Osbornes expired because of appreciation in its value. Respondent takes the position that the property was not held for the production of income or used in an activity entered into for profit in the year here in issue and alternatively that section 280A[3] precludes the deductions because the property was used by petitioner as a residence within the meaning of that section. *551 Petitioner replies to respondent's section 280A argument by stating that she did in effect charge a fair rental value for the Hillcrest Heights property because of no interest being required on her note and her paying utilities bills. In our view the disallowed deductions for depreciation and other expenses are not to be allowed under the provisions of section 280A even if they were otherwise allowable. [4]
*552 "Section 280A, originally enacted as part of the Tax Reform Act of 1976 (Pub. L. 94-445, sec. 601, 90 Stat. 1520), is a response to congressional concern that rental of property used by the taxpayer as a residence afforded the taxpayer unwarranted opportunities to obtain deductions for expenses of a personal nature." (Footnote ref. omitted.) Bolton v. Commissioner,77 T.C. 104, 107-108 (1981), affd. 694 F.2d 556 (9th Cir. 1982). In 1981 section 280A was amended to provide that the rental of a dwelling unit to a family member or any other individual for a fair rental value was not to be considered the personal use of a dwelling unit by the taxpayer. the Senate Explanation to the 1981 amendments indicates that fair rental value was intended to be determined by considering, among other things, comparable rents in the area. Senate Explanation to Pub. L. 97-119, 127 Cong. Rec. S15487 (daily ed. December 16, 1981). Section 280A(a) disallows those deductions otherwise allowable under chapter 1, which includes both section 212 and 183, with respect to a taxpayer's *553 use of a "dwelling unit" as a residence during the taxable year. Section 280A(f)(1) includes within the definition of "dwelling unit" houses such as the Hillcrest Heights property. Subsection (f)(3) further makes section 183 inapplicable to a dwelling unit if (a) applies. Section 280A(b) creates an exception for those deductions which are allowable without regard to their connection with an income producing activity or a trade or business. therefore that subsection authorizes deductions such as interest, of which we have none here, and taxes which respondent has previously allowed in the notice of deficiency. Under section 280A(d)(1) a "dwelling unit" is considered used as a residence if it is used for personal purposes for a number of days exceeding the greater of 14 days or 10 percent of the number of days for which it is rented at a fair rental value. Section 280A(d)(2)(C) deems a dwelling unit to have been used for personal purposes where the unit is used "by an individual * * *, unless for such day the dwelling unit is rented for a rental which under the facts and circumstances, is fair rental." (Emphasis added.) Therefore the resolution to the section 280A issue in *554 this case depends upon our determination of whether or not the Hillcrest Heights property was rented for less than a fair rental value so that the house would be considered to have been used for personal purposes by petitioner. [5]
Petitioner insists the lack of rental paid by the senior Osbornes is not the determinative factor in this case. Specifically petitioner argues that section 280A(d)(2)(C) should not operate to disallow the claimed deductions. According to petitioner, the facts and circumstances present in this case should prevent a conclusion that the rent paid was less than the fair rental value. Respondent argues to the contrary. We agree with respondent. Petitioner testified that the advantages to the senior Osbornes resulting from this sale/leaseback were that they no longer had to pay property taxes, no longer paid utilities, were spared the inconvenience of having repairmen enter their home for minor *555 repairs, Mr. Osborne preferring to do these himself (incidentally saving petitioner this expense), could occupy "their" home rent free and received a monthly cash payment of $ 250 as well. [6] Petitioner fails to appreciate that in return for this "bargain" to the senior Osbornes exchanged the unencumbered ownership of their house, which in itself afforded them rent free occupancy, along with the opportunity or obligation to perform minor repairs, and the ability to sell the property without owner financing and roll the proceeds over into a new home under section 1034. [7] The senior Osbornes also exchanged the opportunity to rent the property for its fair rental value which petitioner states was $ 625 per month and rent a smaller house with the rental income while claiming the expenses themselves. *556 Petitioner further contends that the facts and circumstances indicate that the senior Osbornes in effect paid part of the rent by agreeing to an interest free loan to petitioner so that she paid no interest and the senior Osbornes received no taxable interest income. Petitioner testified that in 1982 she was relieved of the obligation to pay, and her in-laws relieved of the obligation to include in income, some $ 14,400 in interest, which amount according to her estimates would have been owed if she had borrowed the $ 90,000 at the prevailing 16-percent interest rate. This result seems inconsistent with her later testimony that she "had a good sum to invest." [8]
Petitioner also argues that foregone interest "is economically indistinguishable from payment of the same amount *557 under a rental obligation." We are unimpressed by this argument. Petitioner in her 1982 income tax return reported no rental income from the Hillcrest Heights property which she would have been required to report if she had received rental income. The senior Osbornes were entitled to the rent free occupancy of their house both before and after the transaction but afterwards they paid no property taxes, utilities, or major maintenance costs. However petitioner planned to receive substantial tax benefits in addition to buying a home which she stated had a fair market value of $ 90,000 for what in effect was much less. Interest, even at 16 percent, which has not shown to be a proper rate, on $ 18,500 is less than half of the amount petitioner stated to be the fair rental value of the property. We agree with respondent that petitioner presented no evidence which would support her argument that the interest free loan was given in exchange for a portion of what would be the fair rental value. Petitioner did produce tables from which she argued how her investment method was more beneficial to her than a standard sale/leaseback at fair market rates and terms. These, however, were admitted *558 for just that purpose, as figures which she prepared to illustrate her argument. We are not, as it is often noted, bound to accept the self-serving testimony of an interested witness. See Surloff v. Commissioner,81 T.C. 210, 239 (1983). Petitioner stated that $ 625 was the fair rental value of a comparable house. It is a comparable rental value that Congress directed be used in making the inquiry into fair rental property. On the basis of this record we conclude that petitioner has failed to establish that the senior Osbornes paid a fair rental value for the Hillcrest Heights property. Not only did the senior Osbornes pay less than the fair rental value, they paid no rental at all. That fact weighs very heavily in our facts and circumstances determination into whether the fair rental value was paid. This is not the first case in which section 280A has operated to disallow deductions where a rental below fair rental value was paid. [9] Accordingly, under section 280A(d)(2)(C) petitioner is considered to have used the residence for personal purposes. Regardless of petitioner's profit motive or lack thereof in entering into the transaction, petitioner is not *559 entitled to the claimed deductions. Due to concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise stated to the contrary all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue and all rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Section 212 reads in pertinent part as follows:
SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -- (1) for the production or collection of income, (2) for the management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax. ↩
3. Section 280A reads as follows:
SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OR VACATION HOMES, ETC. (a) General Rule. -- Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an S corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. (b) Exception for Interest, Taxes, Casualty Losses, Etc. -- Subsection (a) shall not apply to any deduction allowable to the taxpayer without regard to its connection with his trade or business (or with his income-producing activity). (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use. -- (1) Certain business use. -- Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis -- (A) [as] the principal place of business for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer. * * * (3) Rental use. -- Subsection (a) shall not apply to any item which is attributable to the rental of the dwelling unit or portion thereof (determined after the application of subsection (e)). * * * (5) Limitation on deductions. -- In the case of a use described in paragraph (1), (2), or (4), and in the case of a use described in paragraph (3) where the dwelling unit is used by the taxpayer during the taxable year as a residence, the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of -- (A) the gross income derived from such use for the taxable year, over (B) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used. (d) Use as Residence. -- (1) In general. -- For purposes of this section, a taxpayer uses a dwelling unit during the taxable year as a residence if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of -- (A) 14 days, or (B) 10 percent of the number of days during such year for which such unit is rented as a fair rental. For purposes of subparagraph (B), a unit shall not be treated as rented at a fair rental for any day for which it is used for personal purposes. (2) Personal use of unit. -- For purposes of this section, the taxpayer shall be deemed to have used a dwelling unit for personal purposes for a day if, for any part of such day, the unit is used -- (A) for personal purposes by the taxpayer or any other person who has an interest in such unit, or by any member of the family (as defined in section 267 (c)(4)) of the taxpayer or such other person; (B) by any individual who uses the unit under an arrangement which enables the taxpayer to use some other dwelling unit (whether or not a rental is charged for the use of such other unit); or (C) by any individual (other than an employee with respect to whose use section 119 applies), unless for such day the dwelling unit is rented for a rental which, under the facts and circumstances, is fair rental. The Secretary shall prescribe regulations with respect to the circumstances under which use of the unit for repairs and annual maintenance will not constitute personal use under this paragraph, except that if the taxpayer is engaged in repair and maintenance on a substantially full time basis for any day, such authority shall not allow the Secretary to treat a dwelling unit as being used for personal use by the taxpayer on such day merely because other individuals who are on the premises on such day are not so engaged. (3) Rental to family member, etc., for use as principal residence. -- (A) In general. -- A taxpayer shall not be treated as using a dwelling unit for personal purposes by reason of a rental arrangement for any period if for such period such dwelling unit is rented, at a fair rental, to any person for use as such person's principal residence. * * * (e) Expenses Attributable to Rental. -- (1) In general. -- In any case where a taxpayer who is an individual or an S corporation uses a dwelling unit for personal purposes on any day during the taxable year (whether or not he is treated under this section as using such unit as a residence), the amount deductible under this chapter with respect to expenses attributable to the rental of the unit (or portion thereof) for the taxable year shall not exceed an amount which bears the same relationship to such expenses as the number of days during each year that the unit (or portion thereof) is rented at a fair rental bears to the total number of days during such year that the unit (or portion thereof) is used. (2) Exception for deductions otherwise allowable. -- This subsection shall not apply with respect to deductions which would be allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was rented. (f) Definitions and Special Rules. -- (1) Dwelling unit defined. -- For purposes of this section -- (A) In general. -- The term "dwelling unit" includes a house, apartment, condominium, mobile home, boat, or similar property, and all structures or other property appurtenant to such dwelling unit. (B) Exception. -- The term "dwelling unit" does not include that portion of a unit which is used exclusively as a hotel, motel, inn, or similar establishment. * * * (3) Coordination with section 183. -- If subsection (a) applies with respect to any dwelling unit (or portion thereof) for the taxable year -- (A) section 183 (relating to activities not engaged in for profit) shall not apply to such unit (or portion thereof) for such year, but (B) such year shall be taken into account as a taxable year for purposes of applying subsection (d) of section 183↩ (relating to 5-year presumption). 4. A Memorandum Opinion of this Court, Gilchrist v. Commissioner,T.C. Memo. 1983-288, states in pertinent part: The provisions petitioners apparently intended to rely on, sections 167(a)(2) and 212, do provide that if property is held for investment, then expenses relating thereto are deductible. However, all of these cases cited by petitioners for the proposition that their expenses are so deductible involved tax years prior to the enactment of section 280A and are, therefore, inapposite. Section 280A, governs this case and, except as otherwise provided, overrides sections 167(a)(2) and 212 when a conflict arises. See section 280A(a). Since section 280A does not otherwise provide, deductions otherwise allowable under sections 167(a)(2) or 212 that are attributable to property covered by section 280A↩ must be disallowed. [Fn. ref. omitted.] 5. It should be noted that section 280A(d)(2)(C) applies to any individual and therefore petitioner's argument that the senior Osbornes were not members of her "family" within the meaning of section 267(c)(4) so that section 280A↩ does not apply is irrelevant. 6. The present value of $ 250 per month for 30 years at 16 percent interest [which interest rate petitioner had in certain exhibits but did not substantiate] equals $ 18,509.72, an amount substantially less than the $ 90,000 petitioner asserts the senior Osbornes received for the Hillcrest Heights property. ↩
7. Section 1034 reads in pertinent part as follows:
SEC. 1034. ROLLOVER OF GAIN ON SALE OF PRINCIPAL RESIDENCE. (a) Nonrecognition of Gain. -- If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him and, within a period beginning 2 years before the date of such sale and ending 2 years after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence. (b) Adjusted Sales Price Defined. -- (1) In general. -- For purposes of this section, the term "adjusted sales price" means the amount realized, reduced by the aggregate of the expenses for work performed on the old residence in order to assist in its sale. (2) Limitations. -- The reduction provided in paragraph (1) applies only to expenses -- (A) for work performed during the 90-day period ending on the day on which the contract to sell the old residence is entered into; (B) which are paid on or before the 30th day after the date of the sale of the old residence; and (C) which are -- (i) not allowable as deductions in computing taxable income under section 63 (defining taxable income), and (ii) not taken into account in computing the amount realized from the sale of the old residence. (c) Rules for Application of Section. -- For purposes of this section: (1) An exchange by the taxpayer of his residence for other property shall be treated as a sale of such residence, and the acquisition of a residence on the exchange of property shall be treated as a purchase of such residence. (2) A residence any part of which was constructed or reconstructed by the taxpayer shall be treated as purchased by the taxpayer. In determining the taxpayer's cost of purchasing a residence, there shall be included only so much of his cost as is attributable to the acquisition, construction, reconstruction, and improvements made which are properly chargeable to capital account, during the period specified in subsection (a). (3) If a residence is purchased by the taxpayer before the date of his sale of the old residence, the purchased residence shall not be treated as his new residence if sold or otherwise disposed of by him before the date of the sale of the old residence. ↩
8. It appears unlikely that petitioner would have borrowed the entire $ 90,000 at 16-percent interest if she were going to invest the "good sum" which she either did not invest or is using to service the $ 90,000, 30-year debt. As we do not know the exact amount of this available investment fund, we do not know for a fact that it would or would not be sufficient to cover the debt over the 30-year period. ↩
9. See Bindseil v. Commissioner,T.C. Memo. 1983-411, Gilchrist v. Commissioner,T.C. Memo. 1983-288, and Saunders v. Commissioner,T.C. Memo. 1982-322↩.