CEDRIC R. KOTOWICZ, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kotowicz v. Commissioner
Docket No. 4620-89.
United States Tax Court
T.C. Memo 1991-563; 1991 Tax Ct. Memo LEXIS 611; 62 T.C.M. (CCH) 1229; T.C.M. (RIA) 91563; November 20, 1991, Filed *611 Decision will be entered for the respondent. Arnold M. Flank, for the petitioner. John O. Walsh, Jr., for the respondent. GOFFE, Judge. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION The Commissioner determined the following deficiencies in income tax and additions to tax against petitioner: Taxable Year
Addition to Tax
Ended
Deficiency
[1] Section 6661 1983
$ 21,494
$ 5,373.50
1984
16,995
4,249.00
1985
7,083
1,795.75
Petitioner deducted losses from the rental of his condominium to his parents. The Commissioner disallowed some of the deductions pursuant to section 280A. The factual dispute is whether the condominium in Florida was the principal residence of petitioner's parents or whether Illinois remained their principal residence. FINDINGS OF FACT Petitioner *612 resided in Illinois at the time he filed his petition. Petitioner was married in 1984. Petitioner filed a separate income tax return for 1983. Petitioner filed a joint income tax return for 1984 and 1985, respectively; however, his wife is not a petitioning party with respect to jointly filed returns. Some of the facts have been stipulated for trial pursuant to Rule 91. The stipulations, supplemental stipulations, and accompanying exhibits are incorporated by this reference. Petitioner's parents were Felix and Edith Kotowicz. For convenience, they will sometimes be referred to as the Kotowiczes. Felix Kotowicz opened Ced's Muffler Shop on Grand Avenue in Chicago, Illinois, in 1957. He sold Ced's Muffler Shop to petitioner in 1970 but continued to work in various positions at the business, e.g., manager, overseer, and consultant, from 1970 to 1979. Mr. Kotowicz was 72 years old in 1981 and he decided to reduce his work at the muffler shop and to live part of the year in Florida. Edith Kotowicz visited a real estate office which showed her several condominiums. She selected one in Naples, Florida, which petitioner inspected, purchased, and leased to his parents. They executed *613 a lease of the condominium on June 29, 1982, which provided for monthly rent as follows: Time Period
Monthly Rent
July 1, 1982-October 31, 1982
$ 1,500
November 1, 1982-October 31, 1983
$ 1,800
November 1, 1983-October 31, 1984
$ 2,000
November 1, 1984-October 31, 1985
$ 2,250
The Kotowiczes paid the rent provided in the lease. During this period, the Kotowiczes continued to own a home in Lake Villa, Illinois, which they purchased in 1963. The Illinois property tax bills for the Lake Villa home were mailed to the Kotowiczes at the Lake Villa home and they benefited from a homestead exemption and a senior exemption (an additional homestead exemption under Illinois law) for the Illinois property tax. The Form W-2, Wage and Tax Statement, for 1983, 1984, and 1985, as well as the Form W-2P covering pension income for 1984 and 1985 for Felix Kotowicz for his work at the muffler shop was sent to the Lake Villa home. The 1983, 1984, and 1985 Federal income tax returns for the Kotowiczes bore the Lake Villa home address and they maintained a joint checking account with Pioneer Bank and Trust Company in Chicago which listed the Lake Villa home as their address. At all *614 times during the years at issue, the Kotowiczes were registered to vote in Lake County, Illinois, and did, in fact, vote in the 1984 Presidential election at their designated polling place in Lake Villa, Illinois. During this period, Felix and Edith Kotowicz each had driver's licenses issued by the State of Illinois. Shortly after Thanksgiving in 1982, the Kotowiczes drove to the condominium in Florida where they resided for approximately 3-1/2 months. They returned to the Lake Villa home for Christmas in 1982 and stayed for about 1 week. Over the winter of 1982 and spring of 1983, Felix Kotowicz returned to the Lake Villa home on several occasions to work at the muffler shop and he stayed approximately 1 week on each visit. After the 3-1/2-month period in 1982-83, the Kotowiczes returned to the Lake Villa home and remained until late November 1983 when they drove back to the Florida condominium. They returned to the Lake Villa home for Christmas in 1983 and stayed for about 1 week. Then, in early April 1984, they left the Florida condominium and returned to the Lake Villa home. Over the winter of 1983 and spring of 1984, Felix Kotowicz returned to the Lake Villa home on several *615 occasions to work at the muffler shop and he stayed approximately 1 week on each visit. Shortly after Thanksgiving in 1984, the Kotowiczes drove back to the Florida condominium. They returned to the Lake Villa home for Christmas in 1984 and stayed for about 1 week. Over the winter of 1984 and spring of 1985, Felix Kotowicz returned to the Lake Villa home on several occasions to work at the muffler shop and stayed approximately 1 week on each visit. Sometime in April 1985, the Kotowiczes returned to the Lake Villa home where they remained until they left for the Florida condominium one week after Thanksgiving. On Schedule E of Cedric R. Kotowicz' income tax return for the taxable year 1983, the Florida condominium is described as a "vacation home" which was occupied by petitioner for 3 days and rented at fair rental for 362 days. He reported a percentage of personal use of .8219 percent. The amount of income reported from the rental in 1983 was $ 22,000 but the net loss was $ 55,355. On Schedule E of petitioner's income tax return for the taxable year 1984, the Florida condominium is described as a "residential condo" and does not indicate whether petitioner occupied it in *616 1984. The amount of income reported from the rental in 1984 was $ 24,500 but the net loss amounted to $ 48,472. On Schedule E of petitioner's income tax return for the taxable year 1985, the Florida condominium is described as a "vacation home" which was occupied by petitioner for 14 days and rented at a fair rental for the remaining 351 days. The percentage reported for personal use was 3.8356 percent. The amount of income reported from the rental in 1984 was $ 23,850 but the net loss was $ 42,968. In calculating the net losses from the rental of the condominium, petitioner deducted interest, real estate taxes, depreciation, and maintenance expenses which exceeded the rental income for each taxable period. The Commissioner, in his statutory notices of deficiency mailed to petitioner, disallowed the deductions claimed for depreciation, maintenance, and miscellaneous expenses, such as cable television service, telephone charges, and postage, but he did not disallow the deductions claimed for interest and real estate taxes. The Commissioner did not determine that the rent was not a fair rental and he does not now contest the fairness of the rent that was paid. ULTIMATE FINDING *617 OF FACT The Florida condominium which the Kotowiczes rented from petitioner was not the principal residence of the Kotowiczes. OPINION The deductibility of the losses which petitioner sustained from the rental of the condominium is controlled by section 280A. The pertinent parts of section 280A provide: SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC. (a) GENERAL RULE. -- Except as otherwise provided in this section, in the case of a taxpayer who is an individual * * * no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. * * * (c) EXCEPTIONS FOR CERTAIN BUSINESS OR RENTAL USE; LIMITATION ON DEDUCTIONS FOR SUCH USE. -- * * * (5) LIMITATION ON DEDUCTIONS. -- In the case of a use described in paragraph (1), (2), or (4) and in the case of a use described in paragraph (3) where the dwelling unit is used by the taxpayer during the taxable year as a residence, the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed *618 the excess of -- * * * (d) USE AS RESIDENCE. -- (1) IN GENERAL. -- For purposes of this section, a taxpayer uses a dwelling unit during the taxable year as a residence if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of -- (A) 14 days, or (B) 10 percent of the number of days during such year for which such unit is rented at a fair rental. For purposes of subparagraph (B), a unit shall not be treated as rented at a fair rental for any day for which it is used for personal purposes. (2) PERSONAL USE OF UNIT. -- For purposes of this section, the taxpayer shall be deemed to have used a dwelling unit for personal purposes for a day if, for any part of the day, the unit is used -- (A) for personal purposes by the taxpayer or any other person who has an interest in such unit, or by any member of the family (as defined in section 267(c)(4)) of the taxpayer or such other person; [or] * * * (C) by any individual * * * unless for such day the dwelling unit is rented for a rental which, under the facts and circumstances, is fair rental. * * * (3) RENTAL TO FAMILY MEMBER, ETC., FOR USE AS PRINCIPAL RESIDENCE. -- *619 (A) IN GENERAL. -- A taxpayer shall not be treated as using a dwelling unit for personal purposes by reason of a rental arrangement for any period if for such period such dwelling unit is rented, at a fair rental, to any person for use as such person's principal residence. * * * (4) RENTAL OF PRINCIPAL RESIDENCE. -- (A) IN GENERAL. -- For purposes of applying subsection (c)(5) to deductions allocable to a qualified rental period, a taxpayer shall not be considered to have used a dwelling unit for personal purposes for any day during the taxable year which occurs before or after a qualified rental period described in subparagraph (B)(i) or before a qualified rental period described in subparagraph (B)(ii), if with respect to such day such unit constitutes the principal residence (within the meaning of section 1034) of the taxpayer.
Petitioner makes two arguments for deductibility of the expenses. First, he contends that section 280A(d)(4)(A) refers to the term "principal residence" as it is defined under section 1034. He argues that this reference to the definition of "principal residence" in section 1034 is applicable only when subsection (c)(5) of section 280A applies *620 to a taxpayer's situation. Because this subsection does not apply in this case, petitioner contends that the Court is free to fashion some other definition of principal residence which, according to petitioner, should be resolved in his favor by basing the standard on the subjective intent of the Kotowiczes to reside in the Florida condominium as their principal residence. No authority is cited for this position. Second, petitioner argues that section 280A(d) contains two methods by which a taxpayer could rent a dwelling unit to a family member at a loss and be allowed deductions for the losses. It is well settled that subsection (d)(3)(A) contains a safe harbor for any taxpayer who owns and rents property at a fair rental as long as the unit is used by the family member as that family member's principal residence. In addition, according to petitioner, subsection (d)(2)(C) is available for a taxpayer who owns and rents a dwelling unit to any individual, regardless of whether the individual is a family member, provided a fair rental is paid. Congress enacted section 280A as part of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, as its response to the concern that *621 rental of property used as a residence "afforded the taxpayer unwarranted opportunities to obtain deductions for expenses of a personal nature." Bolton v. Commissioner, 77 T.C. 104, 108 (1981), affd. 694 F.2d 556 (9th Cir. 1982). [2]
Petitioner's key argument involves the principles of statutory construction. The "principal residence" aspect of section 280A(d)(3)(A) has not heretofore been the subject of judicial scrutiny except in a Memorandum Opinion of this Court which is not, of course, considered precedent. In construing section 280A(d)(3)(A), we follow some fundamental rules. Our starting point must be *622 the language used by Congress. Reiter v. Sonotone Corp., 442 U.S. 330, 337, 60 L. Ed. 2d 931, 99 S. Ct. 2326 (1979). We assume that the legislative purpose is expressed by the ordinary meaning of the words used. Richards v. United States, 369 U.S. 1, 9, 7 L. Ed. 2d 492, 82 S. Ct. 585 (1962). Thus, absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive. American Tobacco Co. v. Patterson, 456 U.S. 63, 68, 71 L. Ed. 2d 748, 102 S. Ct. 1534 (1982); Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108, 64 L. Ed. 2d 766, 100 S. Ct. 2051 (1980). Section 280A(a) sets forth the general rule that no deduction is allowed for the expense of using a dwelling unit as a residence of the taxpayer in a taxable year unless the deduction is specifically authorized. Section 280A(d) provides, inter alia, that a dwelling unit is used by the taxpayer as a residence if it is used for "personal purposes." A taxpayer may deduct expenses for maintaining rental property if it is rented to a family member, as defined in section 267(c)(4), as long as two requirements are met: (1) The family member renting the property must use the dwelling unit as a principal residence, *623 and (2) the taxpayer taking the expense deduction must collect a fair rental for the property leased. Sec. 280A(d)(2)(A) and (3). Such deductions are a matter of legislative grace and petitioner bears the burden of proving his entitlement to the deductions claimed. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 78 L. Ed. 1348, 54 S. Ct. 788 (1934); Rule 142(a). Section 267(c)(4) defines "family member" to include Cedric R. Kotowicz' parents under the term "ancestors." Petitioner argues that section 280A(d)(2)(C) provides an "alternative" method for deducting expenses attributable to the rental of a dwelling which is somehow independent of the limitations provided in section 280A(d)(3). Petitioner contends that dollars are fungible, so it does not matter whether the dollars come from family members or someone else. The key point to be made, petitioner hypothecates, is that a fair rental is charged. After that, it is immaterial who pays the rent. We reject this argument. Petitioner asks us, in effect, to ignore the specific limitation on deductibility of dwelling expenses prescribed in section 280A(d)(3). He offers no authority to permit a contrary interpretation of the two precise *624 requirements outlined in section 280A(d)(3). The fact that another section of the Code is less specific and would permit the taxpayer to fall within its provision does not authorize this Court to reject a more specific provision, particularly when the two are interrelated and closely positioned. American Bank & Trust Co. v. Dallas County, 463 U.S. 855, 860, 77 L. Ed. 2d 1072, 103 S. Ct. 3369 (1983) (specific language of statute controls over general language), citing Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108, 64 L. Ed. 2d 766, 100 S. Ct. 2051 (1980) (when statutory language is clear it is controlling). Both petitioner and respondent offer a somewhat lengthy list of cases interpreting section 280A, [3] yet each case cited, with one exception, [4] involves the question of whether the taxpayer charged and/or collected a fair rental from a family member-tenant. Such is not the case here because respondent concedes the amount petitioner charged and collected was a fair rental for the Florida condominium. *625 The plain language of section 280A(d)(3) quite clearly controls petitioner's deduction of expenses in connection with the rental of the condominium to petitioner's parents. As pointed out above, the taxpayers in Gilchrist v. Commissioner, T.C. Memo 1983-288, attempted a somewhat different strategy in challenging the statute's unambiguous wording. In Gilchrist, the taxpayers purchased a house in Boulder, Colorado, and "rented" it to their daughter, but did not charge or collect any money for its use. The taxpayers produced numerous citations of the committee reports to the Tax Reform Act of 1976, underlying section 280A, that use the term "vacation home." The taxpayers argued that the Congress intended to limit the scope of section 280A only to vacation homes. This Court rejected such an interpretation, because the committee reports did "not persuade us that we should ignore the plain language of section 280A" and "Congress specifically stated that section 280A applies to dwelling units used by family members as principal residences." Gilchrist v. Commissioner, T.C. Memo 1983-288. Memorandum Opinions of this Court do not constitute *626 controlling precedent. Newman v. Commissioner, 68 T.C. 494, 502 n. 4 (1977); Nico v. Commissioner, 67 T.C. 647, 654 (1977). Nevertheless, we agree with the analysis in Gilchrist and apply the holding here. Section 280A requires family members to use the rental property as their principal residence to permit taxpayers to deduct expenses under section 280A. We now undertake the factual analysis of the Kotowiczes' activities to decide whether the Florida condominium was their principal residence for purposes of section 280A. At the outset, we observe that section 280A(d)(4)(A) expressly incorporates the section 1034 definition of principal residence for purposes of applying section 280A(c)(5). Because this case involves section 280A(d)(3), petitioner argues that the Court is free to fashion a definition different from that contained in section 1034 and one which, presumably, will resolve the issue in his favor. Without expressly providing for another definition of principal residence, we find no reason or rationale for redefining a term provided in the Code. According to section 1034, the Kotowiczes must live in the Florida condominium *627 on a "regular day-to-day basis" in order to have it qualify as their principal residence. United States v. Sheahan, 323 F.2d 383 (5th Cir. 1963); King v. Commissioner, 72 T.C. 349, 355 (1979); Stolk v. Commissioner, 40 T.C. 345, 353 (1963), affd. per curiam 326 F.2d 760 (2d Cir. 1964); Bayley v. Commissioner, 35 T.C. 288, 297 (1960). During the years in issue, the Kotowiczes appear to have retained the Lake Villa, Illinois, home as their principal residence by registering and voting in the 1984 Presidential election and holding driver's licenses issued by Illinois. In addition, they used the Illinois address on their Federal income tax returns and for a joint checking account at a Chicago bank. Further, the record is clear that the Kotowiczes went to Illinois in the spring of each year where they remained until the fall, at which time they returned to the Florida condominium. During the Thanksgiving and Christmas holidays, they returned to the Chicago area for 1- or sometimes 2-week stays. The record in this case does not establish where the Kotowiczes stayed during these return visits, *628 but it is obvious from their actions that they did not regard the Florida condominium as their "principal" residence as that term is used in the Code. While not controlling, it is important that Cedric R. Kotowicz refers to the condominium as a "vacation home" on Schedule E of his income tax return for the taxable year 1983. Giving due consideration to petitioner's arguments, and weighing the facts presented to us, we conclude that the Kotowiczes did not regard or treat the Florida condominium as their principal residence. The Commissioner determined that petitioner is liable for additions to tax for the taxable years 1983, 1984, and 1985 pursuant to section 6661 because he substantially understated his income tax. Section 6661 imposes an addition to tax at a rate of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. A substantial understatement exists if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $ 5,000. Sec. 6661(b)(1)(A). Petitioner substantially understated his income tax for the taxable years 1983, 1984, and 1985, and is therefore *629 liable for the addition to tax under section 6661(a). Finally, petitioner alleges in the petition that the tax due was improperly calculated because it was not determined using the income averaging method. Because of the disallowance of the deductions on the condominium, petitioner's tax liabilities thereby increase and he may meet the criteria necessary to make him eligible for income averaging. Petitioner introduced no evidence of his "base period" income upon which the averaged amount is calculated. Although this argument was raised in the petition, failure to introduce such evidence results in petitioner's failure to carry his burden of proof with respect to this issue. Rule 142(a). Accordingly, we must deny petitioner's request that the income averaging method of calculation be used in determining his tax liabilities for the 1983, 1984, and 1985 tax years, and sustain respondent's determination of petitioner's tax deficiency. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section numbers refer to the Internal Revenue Code in effect for the taxable years 1983, 1984, and 1985 and Rule numbers refer to the Rules of Practice and Procedure of this Court.↩
2. Saunders v. Commissioner, T.C. Memo 1982-322 (expenses in connection with residential property leased rent-free to taxpayer's son disallowed); Gilchrist v. Commissioner, T.C. Memo 1983-288↩ (taxpayer's expense deductions in connection with residential property leased to son-in-law and daughter at less than fair rental disallowed).
3. Osborne v. Commissioner, T.C. Memo 1987-553 (expenses in connection with the purchase and lease back to taxpayer's parents of their house at below fair rental rate disallowed); Smith v. Commissioner, T.C. Memo 1985-446 (deduction of expenses in connection with residential property leased rent free to son and daughter of taxpayer disallowed); Bindseil v. Commissioner, T.C. Memo 1983-411 (expenses in connection with taxpayer's rental of house to parents at below fair rental disallowed); Saunders v. Commissioner, T.C. Memo 1982-322↩ (expenses in connection with the rent free lease to taxpayer's son disallowed).
4. Gilchrist v. Commissioner, T.C. Memo 1983-288↩.