# United States Tax Court

T.C. Summary Opinion 2023-25

ROBERT R. DOGGART,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 6928-21S.                           Filed July 27, 2023.

————

Robert R. Doggart, pro se.

*Phillip A. Lipscomb* and *John S. Hitt*, for respondent.

SUMMARY OPINION

MARSHALL, *Judge*: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the Petition was filed.[1] Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this Opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $9,910 and additions to tax pursuant to sections 6651(a)(1) and (2) and 6654 of $1,434, $1,147, and $143, respectively, for petitioner's 2017 tax year.[2] After concessions, the issues remaining for decision are (1) whether petitioner received constructive distributions of income from two life insurance policies; (2) whether petitioner is entitled to deduct rental property

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] All monetary amounts have been rounded to the nearest dollar.

expenses reported on Schedule E, Supplemental Income and Loss; and (3) whether petitioner is liable for the additions to tax under sections 6651(a)(1) and (2) and 6654.

*Background*

On February 16, 2017, petitioner was incarcerated. He remained incarcerated through the time of trial. Petitioner resided at his home in Signal Mountain, Tennessee (Signal Mountain Property), for some years before 2017 and through February 16, 2017. The Signal Mountain Property was then left vacant until September 15, 2017. As of that date through the end of 2017, petitioner rented the Signal Mountain Property to his daughter for $500 per month. Petitioner concedes that $500 per month was significantly below the fair market rental value of the property.

Before 2017 petitioner took out a series of loans against two life insurance policies that he held with Prudential Insurance Co. of America (Prudential). The cash value of his policies served as collateral for the loans. While incarcerated, petitioner stopped paying premiums on the two policies. As a result, each policy lapsed and Prudential used the cash values of the policies to repay the loans plus interest due. Prudential subsequently issued petitioner Form 1099–R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 2017 with respect to each policy and reported taxable distributions from life insurance to the Internal Revenue Service (IRS).[3] The amounts reported as taxable on the Forms 1099–R were $13,214 and $5,366, calculated with respect to each policy as the outstanding loan amount repaid by the cash value of the policy less the total premiums petitioner paid with respect to the policy. Upon inquiry by petitioner, Prudential issued to petitioner a letter dated September 1, 2021, with respect to each policy explaining these calculations.

Petitioner failed to file an income tax return for the 2017 tax year and to make estimated tax payments or otherwise fully pay his tax due. Petitioner also failed to file an income tax return for the 2016 tax year.[4]

---

[3] The Forms 1099–R were cited in the notice of deficiency issued to petitioner and addressed by the parties at trial. There is no dispute that the Forms 1099–R were issued. We note, however, that the parties did not submit the forms into evidence.

[4] Petitioner concedes that in years before 2016 he was aware that there were due dates for filing returns and paying tax.

On or around March 9, 2020, the IRS prepared a substitute for return (SFR) pursuant to section 6020(b) for petitioner's 2017 tax year.[5] On November 30, 2020, respondent issued petitioner a notice of deficiency for the 2017 tax year, which, inter alia, included in petitioner's gross income the taxable distribution amounts reported by Prudential. On February 25, 2021, while residing in Kentucky, petitioner timely filed a Petition with this Court.

On or about September 2, 2021, petitioner prepared a proposed income tax return for the 2017 tax year, which he provided to respondent. The proposed return claimed a rental real estate loss deduction of $77,675 in connection with the Signal Mountain Property. In calculating the loss on Schedule E, petitioner claimed deductions for the following alleged expenses: $1,762 for insurance for the entire 2017 tax year; $650 for repairs paid for by his daughter in exchange for an offset in rent; $3,670 for utilities for January 1 through September 15, 2017; and $73,593 for depreciation that petitioner calculated using the appraised value of the property and a seven-year cost-recovery table, which he selected because it corresponded to the length of his remaining prison sentence. At trial petitioner conceded that the amount of his claimed loss was limited to $25,000. *See* § 469(i). Petitioner did not provide any documentation to substantiate the alleged expenses.

*Discussion*

## I.   *Burden of Proof, In General*

Generally speaking, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving by a preponderance of the evidence that the determinations are in error. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Section 7491(a) provides that if, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issues relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B of the Code and meets other prerequisites, the burden of proof shall shift to the Commissioner with respect to that issue. *Higbee v. Commissioner*, 116 T.C. 438, 440–41 (2001). Petitioner has neither argued nor shown that he has satisfied

---

[5] With respect to the SFR, respondent introduced into evidence a signed IRC Section 6020(b) ASFR Certification and corresponding Letter 2566–ASFR-30-Day Proposed Assessment, along with petitioner's transcript of account for 2017.

the requirements of section 7491(a) to shift the burden of proof to respondent and thus bears the burden of proof in this case.

II.    *Income from Life Insurance*

We first decide whether petitioner received constructive distributions of $13,214 and $5,366 as reported on Forms 1099–R with respect to two life insurance policies. When a case involves unreported income and is appealable to the U.S. Court of Appeals for the Sixth Circuit, as is this case, the presumption of correctness does not attach to the Commissioner's determination of such income unless the Commissioner can provide at least a "minimal" factual predicate or foundation of substantive evidence linking the taxpayer to the income-producing activity or to the receipt of funds. *See United States v. Walton*, 909 F.2d 915, 918–19 (6th Cir. 1990); *Garavaglia v. Commissioner*, T.C. Memo. 2011-228, slip op. at 47–48, *aff'd*, 521 F. App'x 476 (6th Cir. 2013). Once the Commissioner makes the required threshold showing, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determination is erroneous or arbitrary. *Walquist v. Commissioner*, 152 T.C. 61, 67–68 (2019) (citing *Helvering v. Taylor*, 293 U.S. 507, 515 (1935)).

The $13,214 and $5,366 taxable distribution amounts reported on the Forms 1099–R are linked to life insurance policies petitioner held with Prudential and are supported by Prudential's letters explaining their calculations. Petitioner admits to holding the policies and to having outstanding loans against them. Petitioner also admits that the policies lapsed in 2017 and raises no dispute with respect to the derivation or computation of the amounts reported on the Forms 1099–R upon the policies' termination. *Cf.* § 6201(d). Respondent's determination of unreported income is therefore entitled to the presumption of correctness, and petitioner must come forward with proof that the determination is in error. *See Martinez v. Commissioner*, T.C. Memo. 2016-182, at *4–5; *Feder v. Commissioner*, T.C. Memo. 2012 10, slip op. at 7; *see also Banister v. Commissioner*, T.C. Memo. 2008 201, slip op. at 5 (holding that a notice of deficiency indicating third-party payers paid the taxpayer the specific amounts in question satisfied the minimal evidentiary burden even though direct evidence was not in the record), *aff'd*, 418 F. App'x 637 (9th Cir. 2011).

Gross income includes income derived from life insurance contracts. § 61(a)(9); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429 (1955). Amounts received from life insurance contracts other

than as a death benefit or annuity are included in gross income to the extent that they exceed the investment in the contract. §§ 72(b), (e)(1)(A), (5)(A), (C), 101(a). The "investment in the contract" is the aggregate amount of the premiums paid less amounts previously received as income from the contract but excluded from gross income calculations. § 72(e)(6).

A taxpayer can receive a constructive distribution from the termination of his life insurance policy, which must be included in gross income, even if the taxpayer does not physically receive cash or other property from the policy during the tax year. *Black v. Commissioner*, T.C. Memo. 2014-27, at *8–9; *Brown v. Commissioner*, T.C. Memo. 2011 83, slip op. at 10–12, *aff'd*, 693 F.3d 765 (7th Cir. 2012); *Sanders v. Commissioner*, T.C. Memo. 2010-279, slip op. at 2–6; *McGowen v. Commissioner*, T.C. Memo. 2009-285, slip op. at 7–12, *aff'd*, 438 F. App'x 686 (10th Cir. 2011); *Barr v. Commissioner*, T.C. Memo. 2009-250, slip op. at 3; *Atwood v. Commissioner*, T.C. Memo. 1999-61, slip op. at 4–6. The termination of both a life insurance policy and indebtedness against the policy functions as the application of the cash value of the insurance policy against the debt owed. *McGowen*, T.C. Memo. 2009 285, slip op. at 8–12. The application of the cash value of a life insurance policy against an outstanding loan is no different from distributing the proceeds of the policy to the taxpayer to permit the taxpayer to use those proceeds to pay off the loan. *Feder*, T.C. Memo. 2012-10, slip op. at 11. A constructive distribution is included in gross income insofar as it exceeds the taxpayer's investment in the life insurance contract. *Sanders*, T.C. Memo. 2010-279, slip op. at 5.

When petitioner stopped paying the premiums on his two life insurance policies, Prudential notified him that the lack of payments resulted in the termination of his loans and underlying policies. The terminations effectively applied the cash values of his policies against the loans in extinction of both. Petitioner's investment in the two contracts is equal to the sum of his premiums paid. When the policies were terminated and the cash values of the policies were taken to repay the loans, petitioner constructively received the cash values of the policies. The amounts constructively received in excess of his investments in the contracts are therefore includible in gross income. Accordingly, we conclude that petitioner, who disputes neither the amounts of the loans extinguished by the policies' cash values nor the amounts of his investments in those policies, received and failed to report life insurance income from the two lapsed policies as Prudential calculated.

Petitioner contends that termination of his life insurance policies should not result in income for the 2017 tax year because he did not actually receive any money at the time the policies were terminated. Petitioner argues that distributions were instead taxable, if at all, when he initiated the loans with Prudential and received cash. Petitioner has not, however, argued or otherwise shown that his policy loans were not true loans. And it is well established that the receipt of cash in the form of a bona fide loan does not constitute income so long as an obligation to repay the borrowing remains. *Commissioner v. Indianapolis Power & Light Co.*, 493 U.S. 203, 207–08 (1990); *Commissioner v. Tufts*, 461 U.S. 300, 307 (1983). Loans taken out against life insurance policies can constitute bona fide loans. *Black*, T.C. Memo. 2014-27, at *8. Because petitioner's borrowings had an obligation of repayment at the time they were taken, they did not constitute income when initially received. While petitioner did not physically receive money upon the lapse of his policies, he no longer had to repay the loans, so it is "irrelevant that no money changed hands." *Brown v. Commissioner*, 693 F.3d at 768. As physical receipt of cash does not dictate taxability, the initial disbursement of the loans was not taxable. Likewise, the lack of distribution of cash to petitioner does not render untaxable the termination of his life insurance policies.

III.   *Rental Property Deductions*

We next decide whether petitioner is entitled to deduct rental real estate expenses reported on his proposed Schedule E with respect to the Signal Mountain Property. Petitioner bears the burden of proving entitlement to any deductions claimed. *See* Rule 142(a); *INDOPCO, Inc.* v. Commissioner, 503 U.S. 79, 84 (1992); *Deputy v. du Pont*, 308 U.S. 488, 493 (1940).

Respondent disputes petitioner's entitlement to the Schedule E deductions for the reported expenses on multiple grounds. He primarily contends that the expenses are nondeductible because of petitioner's use of the Signal Mountain Property as a residence during 2017.[6] Because we agree, we do not address respondent's other arguments on this point.

---

[6] Respondent also contends that petitioner failed to substantiate the expenses and that the expenses were personal. As to the depreciation expense, respondent further argues that petitioner used the incorrect cost basis and the incorrect recovery period for calculating the expense. Finally, he argues that any rental real estate loss petitioner did incur would be nondeductible pursuant to the general passive activity

Taxpayers must comply with the specific requirements for any deductions claimed. *See INDOPCO, Inc. v. Commissioner*, 503 U.S. at 84; *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). Personal expenses may not be deducted unless there is an explicitly provided exception. § 262(a). Under section 212, ordinary and necessary expenses paid or incurred for the managing or maintaining of property held to produce income shall be deductible. Where a taxpayer uses a dwelling as a personal residence during the taxable year, however, deductions under section 212 are not allowed. §§ 262(a), 280A(a), (d); *Hunter v. Commissioner*, T.C. Memo. 2014-164, at *6 (citing *Osborne v. Commissioner*, T.C. Memo. 1987-553). A dwelling is considered the personal residence of the taxpayer for this purpose if the taxpayer used the dwelling for personal purposes for a period exceeding the greater of 14 days or 10% of the days the dwelling was rented at fair market value during the tax year. § 280A(d).

Petitioner resided at the property from January 1 until February 16, 2017, exceeding the 14-day maximum for this reason alone. Petitioner is also considered to have used the Signal Mountain Property for personal purposes on the days it was rented to his daughter for less than fair market value. *See* § 280A(d)(2)(A), (C), (3)(A). The Signal Mountain Property is thus classified as petitioner's personal residence for the 2017 tax year. Accordingly, petitioner may not deduct any of the alleged expenses he reported with respect to the Signal Mountain Property.

IV. *Additions to Tax*

Also at issue are additions to tax for failure to file under section 6651(a)(1), failure to pay the amount shown under section 6651(a)(2), and failure to pay estimated tax under section 6654. Pursuant to section 7491(c), respondent bears the burden of production with respect to petitioner's liability for these additions to tax. In order to satisfy his burden, respondent must produce sufficient evidence indicating that it is appropriate to impose the relevant addition to tax. *Higbee*, 116 T.C. at 446.

A. *Section 6651(a)(1)*

Section 6651(a)(1) provides for an addition to tax if a taxpayer fails to file timely a required income tax return, unless the taxpayer

---

loss limitation of section 469(a) and that petitioner failed to show that the $25,000 offset of section 469(i) applies.

proves that such failure is due to reasonable cause and is not due to willful neglect. *United States v. Boyle*, 469 U.S. 241, 245 (1985). Respondent introduced evidence demonstrating that petitioner was obligated to file a tax return for the 2017 tax year but that he did not do so. *See* § 6012. This is sufficient to satisfy respondent's burden of production. *See Wheeler v. Commissioner*, 127 T.C. 200, 207–08 (2006), *aff'd*, 521 F.3d 1289 (10th Cir. 2008).

Petitioner testified that he had "no valid excuse" for not having filed except for ignorance of the requirement to file while incarcerated. Petitioner had knowledge of a general duty to file as he testified he had done so in previous years. Incarceration is not a reasonable cause for failure to file. *See Llorente v. Commissioner*, 74 T.C. 260, 268–69 (1980), *aff'd in part, rev'd in part on other grounds and remanded*, 649 F.2d 152 (2d Cir. 1981); *George v. Commissioner*, T.C. Memo. 2019-128, at *9–12, *aff'd*, 821 F. App'x 76 (3d Cir. 2020). In the absence of evidence of reasonable cause, we conclude that petitioner is liable for the addition to tax for failure to file under section 6651(a)(1).

B. *Section 6651(a)(2)*

Section 6651(a)(2) imposes an addition to tax for failure to pay timely the amount shown as tax due on a return. In a case such as this, where the taxpayer did not file a return, the Commissioner must introduce evidence that an SFR satisfying the requirements of section 6020(b) was made. *Wheeler*, 127 T.C. at 210. A return made under section 6020(b) is treated as "the return filed by the taxpayer for purposes of determining the amount of the addition" under section 6651(a)(2). § 6651(g)(2).

Respondent produced evidence that the IRS prepared an SFR satisfying the requirements of section 6020(b) for petitioner's 2017 tax year and that petitioner failed to pay the amount shown on the SFR. Respondent has therefore met his burden of production for the addition to tax under section 6651(a)(2). *See Burnett v. Commissioner*, T.C. Memo. 2023-46, at *6 n.7; *Rivera v. Commissioner*, T.C. Memo. 2009 215, slip op. at 7. Petitioner's only argument with respect to the addition is that he was ignorant of the law requiring him to continue paying tax while incarcerated. As with the failure to file a return, incarceration is not a reasonable cause for the failure to pay tax. *See George*, T.C. Memo. 2019-128, at *9–12; *Kohn v. Commissioner*, T.C. Memo. 2009-117, slip op. at 11–14, *aff'd*, 377 F. App'x 578 (8th Cir. 2010). Accordingly,

petitioner is liable for the addition to tax for failure to pay under section 6651(a)(2).

C.  *Section 6654*

Section 6654 imposes an addition to tax on an individual taxpayer who underpays his estimated tax.  The addition to tax is calculated with reference to four required installment payments of the taxpayer's estimated tax liability.  § 6654(c)(1).  Each required installment of estimated tax is equal to 25% of the required annual payment. § 6654(d)(1)(A).  The required annual payment is equal to the lesser of (1) 90% of the tax shown on the individual's return for that year (or, if no return is filed, 90% of his tax for such year), or (2) if the individual filed a return for the immediately preceding taxable year, 100% of the tax shown on that return.  § 6654(d)(1)(B).  In order to satisfy the burden of production under section 7491(c) regarding an individual's liability for the section 6654 addition to tax, the Commissioner, at a minimum, must produce evidence necessary to enable the Court to conclude that the individual had a required annual payment under section 6654(d)(1)(B). *Wheeler*, 127 T.C. at 210–11.

Respondent has met his burden by introducing evidence demonstrating that petitioner had a tax liability for the 2017 tax year, that petitioner did not file a return for the 2017 or 2016 tax year, and that petitioner did not make any estimated tax payments for the 2017 tax year.  *Cf.* id. at 211–12.  Petitioner did not contest this evidence but rather reiterated his claim that he had reasonable cause for his failure to pay: his ignorance of the requirement to pay tax while incarcerated. Even if we were to find this argument persuasive, section 6654 provides no general exception for reasonable cause or lack of willful neglect.  *See Mendes v. Commissioner*, 121 T.C. 308, 323 (2003).  Accordingly, petitioner is liable for the addition to tax for failure to pay estimated tax under section 6654.

In reaching the holdings herein, we have considered all arguments put forth by the parties, and to the extent they are not discussed above, we consider them moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*